## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## (MIAMI DIVISION)

FIBERTEX CORPORATION,
a foreign corporation

     Plaintiff,

v.

NEW CONCEPTS DISTRIBUTORS
INT'L, LLC, f/k/a NEW CONCEPTS
DISTRIBUTORS, INC., a Florida
limited liability company; JANICE
SANTIAGO, an individual; RAFAEL
G. SEGARRA, an individual; MARIO
RUIZ, an individual;

     Defendants.

Case No. _____

_____/

## COMPLAINT

Plaintiff, FIBERTEX CORPORATION ("FIBERTEX"), through its undersigned counsel,

files this Complaint against Defendants, NEW CONCEPTS DISTRIBUTORS INT'L, LLC, f/k/a

NEW CONCEPTS DISTRIBUTORS, INC. ("NEW CONCEPTS"), JANICE SANTIAGO

("SANTIAGO"), RAFAEL G. SEGARRA ("SEGARRA"), and MARIO RUIZ ("RUIZ")

(collectively the "Defendants"), and states as follows:

### INTRODUCTION

1.    For 20 years, Plaintiff FIBERTEX (a Colombian corporation) has manufactured

and exported to the United States compression shapewear garments[1] under the trademark,

*Co'Coon*. During the period relevant to this action, Defendant NEW CONCEPTS served as the

---

[1] Compression shapewear garments have become a popular segment of the garment industry. The shapewear garment is worn under the clothes for various purposes including slimming, tightening, and body sculpting effects that certain women and men find desirable.

distributor of *Co'Coon* products in the market. FIBERTEX also exports its *Co'Coon* shapewear garments to 11 other countries throughout the world; the *Co'Coon* mark is registered in all countries where *Co'Coon* products are distributed.

2.      In September 2015, a new ownership group purchased FIBERTEX and invested in the growth of the *Co'Coon* brand in the United States.  FIBERTEX developed new products for the United States market, purchased new manufacturing equipment with greater output capabilities, and increased their labor force to meet the growing demand for its products in the United States. As a result, revenues for **Co'Coon products in the United States market grew by over 500%** from 2016 to 2019. NEW CONCEPTS, as the United States distributor of the *Co'Coon* products, was a major beneficiary of that growth.

3.      NEW CONCEPTS, acting through its officers and agents—SANTIAGO, SEGARRA, and RUIZ—unlawfully seized upon the growing popularity of the *Co'Coon* brand; they engaged in a deliberate, systematic, and comprehensive scheme to build its own copycat-competing *Curveez* mark by syphoning customers from FIBERTEX through unfair methods of competition, and through the use of deceptive and unlawful business practices; for example:

   a.   Defendants intentionally, and without authority, used the *Co'Coon* marks to sell Non-*Co'Coon* products that the Defendants themselves were manufacturing;

   b.   Defendants removed from *Co'Coon* products tags bearing the *Co'Coon* marks, and replaced them with a tag bearing the competing "*Curveez*" mark, which is a mark that is owned by Defendant NEW CONCEPTS;

   c.   Defendants intentionally structured and marketed their internet advertisements and sales to deceive consumers into believing that there is an association or affiliation between the *Co'Coon* mark and the competing *Curveez* mark.  For example,

Defendants are now manufacturing shapewear products and selling them under the competing *Curveez* mark, while the on-line product description for several *Curveez* products falsely state that the product was "[p]reviously known as: *Co'Coon* . . .";

d.  Defendants are using positive on-line consumer reviews that correspond only to *Co'Coon* products in its advertising for *Curveez* products; and

e.  Defendants are intentionally redirecting on-line consumers searching for *Co'Coon* products to websites selling the competing *Curveez* products; thus, deceiving consumers, who believe they are shopping for and purchasing *Co'Coon*, products but instead, are actually purchasing the competing *Curveez* products.

4.  Through these and other actions alleged in more detail below, Defendants have unlawfully profited from the *Co'Coon* mark and tradename's goodwill, and they are aggressively attempting to build the competing *Curveez* mark on back of FIBERTEX's *Co'Coon* mark and tradename's recognition and goodwill.

5.  FIBERTEX now brings this suit to prevent the further misappropriation of its *Co'Coon* mark and other intellectual property, to cause Defendants to cease and desist from further defrauding consumers, and to recover damages arising from Defendants' willful and bad faith actions.

**PARTIES**

6.  Plaintiff, FIBERTEX, is a corporation organized under the laws of Colombian with its principal place of business in Bogota, Colombia.

7.  Defendant, NEW CONCEPTS, is a Florida limited liability corporation, with its principle place of business in Florida and otherwise domiciled in Florida.

3

8.     Defendant, SANTIAGO, an individual, who is *sui juris,* resides in Miami-Dade County, Florida, is a manager and upon information and belief a member of NEW CONCEPTS; SANTIAGO knowingly and actively orchestrated, participated, and/or approved the infringing acts and the unfair business practices.

9.     Defendant, SEGARRA, an individual, who is *sui juris,* resides in Miami-Dade County, Florida, is vice president and upon information and belief a member of NEW CONCEPTS; SEGARRA knowingly and actively orchestrated, participated in, and or approved the infringing acts and unfair business practices.

10.    Defendant, RUIZ, an individual, who is *sui juris,* resides in Miami-Dade County, Florida, is an agent of NEW CONCEPTS; RUIZ knowingly and actively orchestrated, participated in, and/or approved the infringing acts and unfair business practices.

## JIURISDICTION AND VENUE

11.    The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (b), and 15 U.S.C. § 1121 in so far as this action sets forth claims arising under 15 U.S.C. § 1114 (Trademark Infringement), 15 U.S.C. § 1125(a) (False Designation of Origin, Unfair Competition), 15 U.S.C. § 1125(d) (Cyberpiracy), and 18 U.S.C. § 1836(b)(1) (Misappropriation of Trade Secrets). Additionally, the Court has subject matter jurisdiction under 28 U.S.C. § 1332(b), as the matter in controversy exceeds the jurisdictional limits of this Court and is between FIBERTEX, a citizen of Colombia, and Defendants who are all citizens of, or domiciled in, Florida.

12.    Also, under 28 U.S.C. § 1367, supplemental jurisdiction exists over the state law claims stated herein, each of which arise out of a common nucleus of operative facts from which the federal claims arise.

13.     The Court has personal jurisdiction over the Defendants, who reside and otherwise conduct business in Miami-Dade County, Florida.

14.     Venue in this judicial district is proper under 28 U.S.C. §1391 (b)(1) and (2) because Defendants reside and otherwise conduct business in this district, and all or a substantial part of the infringing and unlawful acts alleged below occurred within the Southern District of Florida; to be sure, Defendants caused infringing sales within the district, initiated false and confusing internet website advertising and promotion in this district, and they engaged in other unauthorized uses of the Plaintiff's marks within this district.

## GENERAL ALLEGATIONS

**I.     FIBERTEX and its *Co'Coon* Marks**

15.     FIBERTEX is a leading manufacturer of shapewear products, which it sells under the ***Co'Coon*** tradename and trademark.

16.     *Co'Coon* shapewear products are used by women and men as foundation garments to create a slimming, tightening, and body sculpting effect.

17.     The *Co'Coon* tradename and trademark is registered in each country where *Co'Coon* products are sold, including the United States.

18.     The *Co'Coon* trademark, which is depicted hereinbelow, is word mark that was first used in United States commerce on June 1, 2000:

$$\mathcal{C}\!o'\!\mathcal{C}\!oo\mathcal{N}$$

(the "*Co'Coon* Mark"). FIBERTEX filed for trademark protection of the *Co'Coon* Mark (Serial No. 77-868,952) on November 10, 2009, and eventually received the trademark registration on April 26, 2011.  A copy of the *Co'Coon* Mark's trademark registration is attached hereto as **Exhibit 1**.

19.     Between June 1, 2000 to the present, FIBERTEX consistently used the *Co'Coon*

Mark and tradename in interstate commerce, thereby acquiring protectable prior use rights in same.

20.     FIBERTEX also owns and uses another *Co'Coon* trademark in US interstate

commerce; this is a composite mark that depicts a budding flower and contains the words

"CO'COON Beautiful. Comfortable. You," this mark is shown hereinbelow:



(the "Composite *Co'Coon* Mark") (the *Co'Coon* Mark and the Composite *Co'Coon* Mark will be

referred to collectively as the "*Co'Coon* Marks").  The Composite *Co'Coon* Mark was first used

in United States commerce on 2016. On July 17, 2019, FIBERTEX filed an application for

trademark protection of the Composite *Co'Coon* Mark (Serial No. 88520002); however, as of the

filing of this Complaint the registration is still pending.  A copy of the Composite *Co'Coon* Mark's

registration status is attached hereto as **Exhibit 2**.

21.     Between 2016 to the present, FIBERTEX consistently used the Composite

*Co'Coon* Mark in interstate commerce, thereby acquiring protectable prior-use rights in same.

22.     The *Co'Coon* Marks and tradename are inherently distinctive, as they are arbitrary

or suggestive in nature, and thereby entitled to protection.

## II.     The FIBERTEX and NEW CONCEPTS Distribution Relationship

23.     *Co'Coon* shapewear products are sold in 11 different countries throughout North,

South, and Central America, and the Caribbean.

24.     FIBERTEX manufactures its *Co'Coon* products in Colombia and exports them to the several countries, where a local distributor or wholesaler will then distribute the product to several retailers throughout that country.

25.     From the year 2006 to 2019, NEW CONCEPTS served as a distributor for *Co'Coon* products in the United States

26.     As a distributor, NEW CONCEPTS would submit purchase orders to FIBERTEX for *Co'Coon* shapewear products, FIBERTEX would produce and ship the products to NEW CONCEPTS together with an invoice, which NEW CONCEPTS would then pay within 90 days. NEW CONCEPTS would sell the *Co'Coon* products at wholesale prices to retailers—that is, on-line retailers as well as brick-and-mortar retailers.

27.     To assist NEW CONCEPTS in its distribution efforts, FIBERTEX permitted NEW CONCEPTS to use the *Co'Coon* Marks and name to promote and advertise *Co'Coon* products. Consistent with this implied license, NEW CONCEPTS was limited to use the *Co'Coon* Marks and tradename on websites and social media to promote only *Co'Coon* products.

28.     In or around 2011, FIBERTEX permitted NEW CONCEPTS to create a website with the domain name Co'CoonShapers.com, where NEW CONCEPTS could sell *Co'Coon* products directly to consumers at retail prices. From approximately 2012 to 2019, NEW CONCEPTS sold *Co'Coon* products through Co'CoonShapers.com.

29.     In or around 2013, NEW CONCEPTS began manufacturing or distributing abdominal waistbands, which are also described as waist trainers. At that time, FIBERTEX's former ownership group granted NEW CONCEPTS an oral or implied license to sell its waistbands under the *Co'Coon* Mark.

30.     In or around September 2015, when FIBERTEX's new ownership group took over, FIBERTEX revoked that license but maintained the long-standing relationship that it had with NEW CONCEPTS as a distributor of *Co'Coon* products.  Upon information and belief, NEW CONCEPTS began selling its waistband under the mark *Curveez,* while still distributing *Co'Coon* products.

31.     FIBERTEX did not object to NEW CONCEPTS manufacturing and sale of *Curveez* waistband products, because those products did not compete with FIBERTEX's shapewear products.

32.     Shortly after their purchase, FIBERTEX's new ownership group began making great efforts and investments to increase sales of *Co'Coon* products in the United States FIBERTEX's investments included attending trade shows, developing new products, improving existing products, hiring more employees, purchasing more manufacturing equipment to increase production, and other efforts.

33.     In 2016 and 2018, FIBERTEX hired consultants to help improve existing *Co'Coon* products, as well as develop new products that would appeal to the United States market. NEW CONCEPTS, as FIBERTEX's United States distributor, was privy to these communications with the consultants.  As alleged in further detail below, NEW CONCEPTS has used much of this information to grow its copy-cat *Curveez* brand and products.

34.     From 2015 to 2019, FIBERTEX supplied NEW CONCEPTS with 61 different *Co'Coon* product types for NEW CONCEPTS to sell.

## III.    Defendants' Unauthorized Use of the *Co'Coon* Marks and Trade Name

35.     Unbeknownst to FIBERTEX, Defendants were a fox in the hen house; as Defendants were distributing *Co'Coon* products, they were also knowingly, intentionally, and

methodically taking steps to create a false sense of affiliation, connection or association between the *Co'Coon* Marks and Defendants' *Curveez* mark.

### a. *The False Declaration of Incontestability*

36. On January 21, 2019, SANTIAGO filed with the USPTO a Declaration of Incontestability of the *CO'COON* Mark (the "False Declaration of Incontestability"). SANTIAGO executed the Declaration, which identifies NEW CONCEPTS as the new "proposed owner," who was to replace FIBERTEX as the current owner of the *CO'COON* Mark.  A copy of the False Declaration of Incontestability is attached hereto as **Exhibit 3**.

37. FIBERTEX did not learn about the False Declaration of Incontestability until July 5, 2019, when the USPTO notified FIBERTEX's attorneys of the False Declaration of Incontestability, which the USPTO had rejected because SANTIAGO failed to show that the proper chain of title to transfer ownership of the *Co'Coon* Mark from FIBERTEX to NEW CONCEPTS.  That same day, FIBERTEX's Attorneys filed a new Declaration of Incontestability (the "Real Declaration of Incontestability"); not believing that NEW CONCEPTS would purposefully make such a blatantly false statement to the USPTO, FIBERTEX stated that the False Declaration of Incontestability "was made in error and should be voided."  A copy of the USPTO's February 22, 2019 rejection of the False Declaration of Incontestability is attached hereto as **Exhibit 4**. A copy of FIBERTEX's Real Declaration of Incontestability is attached hereto as **Exhibit 5**.

38. On July 5, 2019, FIBERTEX e-mailed SANTIAGO, inquiring about the False Declaration of Incontestability; SANTIAGO's sister, Yasmin SANTIAGO, who is an attorney licensed to practice in Puerto Rico, responded to FIBERTEX's email explaining that SANTIAGO had filed the Declaration because *inter alia* NEW CONCEPTS appears as the contact person for

the *Co'Coon* Mark's Registration, and SANTIAGO was the person who purportedly managed the *CO'COON* Mark.

39.     Thereafter, FIBERTEX advised that it (and not SANTIAGO) would be managing *Co'Coon's* Marks in the future.

40.     FIBERTEX later learned that these false and misleading statements commonplace for Defendants, as they were routinely making them to syphon consumers from FIBERTEX, and to intentionally cause confusion in the marketplace.

### b. *FIBERTEX Learns of the Unauthorized Use of Co'Coon Marks and Products*

41.     On March 17, 2019, FIBERTEX notified SANTIAGO and SEGARRA of several instances where *Co'Coon* products or marks were being misused.

42.     For example, FIBERTEX advised SANTIAGO and SEGARRA that *Co'Coon* products were displayed in NEW CONCEPTS' social media pages—(https://www.instagram.com/curveezofficial/) (https://www.instagram.com/curveezrd/), and (https://www.facebook.com/curveezofficial/)–but neither the *Co'Coon* trademark nor tradename appeared.   Believing NEW CONCEPTS was legitimately trying to promote and sell *Co'Coon* products, FIBERTEX simply requested that NEW CONCEPTS use the Co'Coon Marks or tradename in those social media posts so as to avoid any confusion of consumers.   A copy of FIBERTEX's March 17, 2019 email is attached hereto as **Exhibit 6**.

43.     In hindsight, it is now plain to see that the omission of the *Co'Coon* Marks and tradename on the competing *Curveez* social media pages was not an innocent mistake; rather, this was one of first instances of Defendants' intentional reverse-passing-off, where Defendants were intentionally misrepresenting *Co'Coon* products as competing *Curveez* products.

44.     In that same email, FIBERTEX notified SANTIAGO and SEGARRA that three of New Concept's on-line retail customers—ClassicShapeWear.com; FeelFoxy.com; and ShapEager.com—are using the *Co'Coon* Marks and tradename to sell products that were not *Co'Coon*, rather they were NEW CONCEPTS' competing *Curveez* products. FIBERTEX requested that NEW CONCEPTS notify these retail customers to have them rectify this. *See* **Exhibit 6.**

45.     While unbeknownst to FIBERTEX at the time, Defendants were the ones who actually directed or intentionally caused these on-line retailers to use the *Co'Coon* Marks and name to promote and sell the competing *Curveez* products, thereby furthering the likelihood of confusion as to the association or connection between *Co'Coon* and *Curveez* to advance the sales and goodwill of *Curveez*.

### c.     *Defendants Removed the Co'Coon Marks from Co'Coon Products, then Re-Packaged and Re-Tagged them Under the Curveez Name*

46.     On November 2, 2019, shortly after receiving an email from a consumer inquiring whether *Co'Coon* products could still be purchased on Shapermint.com, Alejandra Angel, a Key Account Manager at FIBERTEX, visited the Shapermint.com website.

47.     Shapermint.com is one of NEW CONCEPTS' on-line retail customers.

48.     On the Shapermint.com website, Ms. Angel ordered four products that appeared to be among FIBERTEX's best-selling *Co'Coon* products but were being promoted and sold under the competing *Curveez* name.

49.     The Order Confirmation from Shapermint.com shows the products ordered were named (a) "*Curveez* Second Skin Hip Hugger Bodysuit," (b) "*Curveez* Incredibly Shaping Cami," (c) "*Curveez* Ever Sexy Bodyshort," and (d) "*Curveez* Signature Control High Waist Brief." A true and correct copy of the November 2, 2019 Shapermint.com Order Confirmation is attached

hereto as **Exhibit 7**. Upon receipt of these products from Shapermint.com, FIBERTEX confirmed that these products were in fact *Co'Coon* products that had been re-tagged and re-packaged using the *Curveez* name.

50.     On November 12, 2019, FIBERTEX had a non-party individual with no interest in FIBERTEX, order eight products from the *Curveez.com* website; four products were being promoted and sold under the *Co'Coon* Marks and name, while the other four products were being promoted and sold under the *Curveez* Mark and name. A copy of the November 12, 2019 Curveez.com Order Confirmation is attached hereto as **Exhibit 8**. Upon receipt of these products from Curveez.com, FIBERTEX confirmed that some of these products were in fact *Co'Coon* products that had been re-tagged and re-packaged using the *Curveez* name, and others were copycat *Co-Coon* products being manufactured and distributed under the *Curveez* name.

51.     On November 26, 2019, FIBERTEX purchased six products from Shapermint.com, which were being sold under the *Curveez* name.  A copy of the November 26, 2019 Shapermint.com Order Confirmation is attached hereto as **Exhibit 9**.  Upon receipt of these products from Shapermint.com, FIBERTEX confirmed that some of these products were in fact *Co'Coon* products that had been re-tagged and re-packaged using the *Curveez* name, and others were copycat *Co-Coon* products being manufactured and distributed under the *Curveez* name.

52.     Through these orders, FIBERTEX realized and confirmed that Defendants had undertaken a purposeful and elaborate scheme to syphon consumers from FIBERTEX. Thereafter, FIBERTEX conducted a deeper investigation into Defendants' misuse of the *Co'Coon* Marks, which revealed that Defendants committed additional acts of infringement, unfair competition and cyberpiracy, these additional acts are outlined below.

> **d.  Additional Acts Constituting Trademark Infringement, Unfair Competition and Cyberpiracy**

53.     Defendants used *Co'Coon* Marks and tradename to sell or advertise *Curveez* and other NEW CONCEPTS products throughout several internet websites.  Specifically, this conduct occurred and continues to occur on:

      a.   Classicshapewear.com; *See* **Composite Exhibit 10**

      b.   Shapewearusa.com; *See* **Composite Exhibit 11**

      c.   Mytotaldesire.com; *See* **Exhibit 12**

      d.   Ebay.com; *See* **Exhibit 13**

      e.   bonanza.com; *See* **Exhibit 14**

      f.   thefamouscurves.com; *See* **Exhibit 15**.

54.     Defendants engaged in reverse-passing-off by selling and promoting FIBERTEX's *Co'Coon* products under the *Curveez* names.  Specifically, this conduct occurred and is occurring on:

      a.   Shapewearusa.com, *See* **Composite Exhibit 16**

      b.   @curveezwomen; *See* **Composite Exhibit 17**

      c.   Curveez.com; *See* **Composite Exhibit 18**

55.     Defendants misled consumers by selling and promoting FIBERTEX's *Co'Coon* products without identifying them under the *Co'Coon* name; in fact, many of these products were sold or promoted on websites immediately next to *Curveez*-marked products, which only exacerbates the confusion.  Specifically, this conduct occurred or is occurring on feelfoxy.com.  *See*. **Composite Exhibit 19.**

56.     Defendants are redirecting on-line consumers searching for *Co'Coon* shapewear products to websites and landing pages selling only competing *Curveez* products:

a. A google search for "Cocoon Shapewear" populates a list of links, which includes a link titled "**Co'Coon Shapewear | Shapermint.**" That link has the web-address https://shapermint.com/collections/co-coon. Consumers clicking this link expect to be taken to a landing page displaying the *Co'Coon* products being sold through the Shapermint.Com website. However, clicking this link takes consumers to the "*Curveez*" landing page on the Shapermint.com website, which has the web-site address https://shapermint.com/collections/curveez. Upon information and belief, NEW CONCEPTS instructed and or caused Shapermint to re-direct consumers looking for *Co'Coon* products to the Shapermint landing page displaying *Curveez* products.[2]

b. After creating the CoCoonShapers.Com website and for years selling *Co'Coon* Products through it, Defendants are now, re-directing Consumers visiting CoCoonShapers.Com to Curveez.com, where consumers can only purchase *Curveez* products.

57. The act of redirecting the consumers from *Co'Coon*-related websites to competing *Curveez* websites is likely to cause confusion as to the affiliation of *Curveez* and *Co'Coon*. Moreover, this conduct was employed to actually and intentionally steal consumers, as consumers intending to visit *Co'Coon*-related websites (*i.e.* CoCoonShapers.Com) ostensibly to buy *Co'Coon* products, are instead re-directed to *Curveez*-related websites (i.e. Curveez.com) where the unsuspecting consumers would buy *Curveez* products and not *Co'Coon*.

---

[2]   FIBERTEX has a video, which illustrates this process. Unless earlier requested, this video will be made available and produced together with the other documents disclosed during the initial disclosures stage of this case

58.     Defendants were not authorized to use the *Co'Coon* Marks or tradename to promote, advertise, or sell *Curveez* products, or other third-parties' products.

### IV.     Defendants Stole FIBERTEX'S Trade Secret Information and Began Manufacturing Products that Were Virtually Identical to *Co'Coon* Products

59.     In or around 2018, NEW CONCEPTS hired RUIZ, who SANTIAGO and SEGARRA knew had been a long-time employee of FIBERTEX.

60.     SANTIAGO and SEGARRA also knew RUIZ, in addition to having been a FIBERTEX employee, owned a dress-making workshop in Colombia, where FIBERTEX would send certain *Co'Coon* product types for sewing.

61.     Quality shapewear, like *Co'Coon*, has its own unique set of characteristics that include, seams, elasticity, weight, texture, breathability, color-dying techniques and many other processes that make the feel of quality garments different from one another.  Ultimately, it is this feel and unique combination of design and manufacturing characteristics that makes one product or another appealable to a consumer.  These characteristics could mean the difference between brand loyalty and repeat customers, or customers abandoning a brand that they do not like.

62.     RUIZ, in his capacitates as operations manager of FIBERTEX and as a FIBERTEX manufacturer, had access to and learned confidential trade secret information that belongs to FIBERTEX, and which FIBERTEX took reasonable measures to maintain secret or confidential.

63.     In these capacities, RUIZ learned the specifications, procedures, and methods for producing various *Co'Coon* products which include but are not limited to  the design elements of each product (i.e. the fabric or thread type, thread count, weave, elasticity specification for different fabrics, degrees of compression, tinting and color, etc.), the development of software programs used in the knitting process, the techniques for programming and adjusting manufacturing equipment to achieve the desired finishes and feel to products, as well as other

confidential information.  RUIZ also learned the identity of FIBERTEX's suppliers, many of which he has visited.

64.     Upon information and belief, in or around November 2019, RUIZ and SANTIAGO visited several manufacturing plants in Colombia to determine whether those manufacturing plants could produce copies of *Co'Coon* products.

65.     In late 2019, Defendants began manufacturing and selling shapewear products that are exact replicas or virtually indistinguishable copies of *Co'Coon* products.  Defendants are selling these knock off *Co'Coon* products under the *Curveez* tradename; moreover, to further the consumer confusion, *Curveez* uses virtually identical style numbers, design finishes, price points, color schemes and size offerings. Attached hereto as **Exhibit 20** is an illustration comparing the *Co'Coon* products and the imitation product that is now being sold under the *Curveez* name.

66.     On information and belief, RUIZ specifically used the Trade Secrets regarding the nuanced manufacturing process developed over year to create the look, and more importantly the feel and comfort that  are associated with *Co'Coon* products.

67.     Taken together, Defendants' above-described conduct illustrates an elaborate scheme that was intended to create wide-spread confusion in the marketplace as to the affiliation or connection between *Co'Coon* and *Curveez*.  In fact, Defendants' scheme was intended to make consumers believe that *Co'Coon* and *Curveez* are one and the same.  *See* **Exhibit 21** (an Instagram post from Shapermint.com, wherein Shapermint.com is stating that "*Curveez* is the new name of *Co'Coon* . . . )." Upon information and belief, Defendants misrepresented this to Shapermint.com, who is one of NEW CONCEPTS' on-line retail customers.

68.     FIBERTEX has hired the undersigned firm and is obligated to pay them reasonable attorneys' fees.

69.     All conditions precedent to the filing of this action have been performed, occurred or have been waived.

## COUNT I
### 15 U.S.C. § 1114
#### (Trademark Counterfeiting and Infringement – All Defendants)

70.     FIBERTEX re-alleges paragraphs 1 – 69 as if fully set forth herein.

71.     FIBERTEX owns the *Co'Coon* Mark, which is a registered trademark that is entitled to protection; and

72.     Defendants' knowingly and intentionally used of the *Co'Coon* Mark to advertise, promote, market, offer for sale, or sell non-*Co'Coon* products, which infringes upon FIBERTEX's trademark. Specifically, this conduct occurred and or continues to occur on:

     a.  Classicshapewear.com; *See* **Composite Exhibit 10**

     b.  Shapewearusa.com; *See* **Composite Exhibit 11**

     c.  Mytotaldesire.com; *See* **Exhibit 12**

     d.  Ebay.com; *See* **Exhibit 13**

     e.  Bonanza.com; *See* **Exhibit 14**

     f.  Thefamouscurves.com; *See* **Exhibit 15**.

73.     Defendants' unauthorized use for the *Co'Coon* Mark is likely to cause confusion, mistake, or deception as to the source, origin, affiliation, approval, or sponsorship of Defendants' goods.

74.     To the extent that SANTIAGO, SEGARRA, or RUIZ did not directly commit a particular infringing act, they are still liable as a contributory infringer because each of them has willfully, knowingly, intentionally, and in bad faith participated in, aided, abetted, enabled,

encouraged, ratified, profited from, induced, known of, conspired to carry out, and otherwise contributed to the direct infringement.

75.    Defendants' conduct constitutes trademark counterfeiting and willful infringement of the *Co'Coon* Mark.

76.    FIBERTEX has incurred and will continue to incur damages as a result of Defendants' infringements of the *Co'Coon* Mark.

77.    FIBERTEX has also incurred and will continue to incur irreparable harm unless preliminarily and permanently enjoined by this Court.

**WHEREFORE,** FIBERTEX requests this Court enter judgment against Defendants, and awarding FIBERTEX the following:

(1) a monetary judgment,

  a.    for an amount equal to (i) defendant's profits, (ii) any damages sustained by the FIBERTEX, (iii) the costs of the action, and (iv) reasonable attorney fees in prosecuting the action, or

  b.    alternatively, because this case involves Defendants' use of a counterfeit mark or designation, the award should be for an amount equal to (i) three times such profits or damages, whichever amount is greater, together with a reasonable attorney's fees and costs for prosecuting this action, or (ii) statutory damages pursuant to 15 U.S.C. § 1117(c) of not less than $1,000 and up to $2,000,000 per counterfeit mark per type of goods sold, offered for sale, or distributed, plus reasonable attorney's fees and costs for prosecuting this action, and

(2) a preliminary and permanent injunction together with the other relief requested in FIBERTEX's common prayer for relief set forth below.

**COUNT II**
**15 U.S.C. § 1125(a)**
**(False Designation of Origin, Unfair Competition – All Defendants)**

78.     FIBERTEX re-alleges paragraphs 1 – 69 as if fully set forth herein.

79.     FIBERTEX owns the *Co'Coon* Marks and tradename, which are entitled to protection.

80.     Defendants misused the *Co'Coon* Marks and tradename in commerce, and Defendants made false or misleading descriptions of fact, and/or false or misleading representations of fact concerning *Co'Coon* and its affiliation to *Curveez* and NEW CONCEPTS; *to wit:*

   a.  Defendants displayed *Co'Coon* products on *Curveez's* social media pages—instagram.com/curveezofficial;  instagram.com/curveezrd; facebook.com/curveezofficial—and concealed the fact that these products were actually *Co'Coon* products;

   b.  Defendants caused several on-line retail customers to use the *Co'Coon* Marks and tradename to sell *Curveez* products;

   c.  Defendants removed the tags bearing the Co'Coon Mark from Co'Coon products, then re-tagged and re-packaged those products using the *Curveez* name;

   d.  Defendants used images depicting *Co'Coon* products to sell or advertise *Curveez* and other NEW CONCEPTS products throughout several internet websites;

   e.  Defendants redirected on-line consumers searching for *Co'Coon* shapewear products to websites and landing pages selling only *Curveez* products.

f.   Defendants are now manufacturing shapewear products and selling them under the *Curveez* mark, but the on-line product description for several *Curveez* products falsely state that the product was "[p]reviously known as: *Co'Coon . . .;*"

g.   Defendants have caused on-line retailers to use consumer reviews that correspond to *Co'Coon* products as if those reviews corresponded to Defendants' *Curveez* products.  Attached hereto as **Composite Exhibit 22** are a series of screenshots of *Co'Coon* customer reviews being used to sell *Curveez* products on Shapermint.Com; and

h.   Defendants misrepresented to Shapermint.com or caused Shapermint.com to believe that "*Curveez* is the new name of *Co'Coon . . . .*"

81.   Defendants' foregoing conduct is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of FIBERTEX with CURVEEZ or other NEW CONCEPTS products.

82.   Additionally, or alternatively, Defendants' conduct likely to cause confusion, or to cause mistake, or to deceive consumers into believing that *Curveez* products are *Co'Coon* products, or vice-a-versa.

83.   To the extent that SANTIAGO, SEGARRA, or RUIZ did not directly commit a particular wrongful act, they are still liable as a contributory infringer because each of them has willfully, knowingly, intentionally, and in bad faith participated in, aided, abetted, enabled, encouraged, ratified, profited from, induced, known of, conspired to carry out, and otherwise contributed to the direct infringement.

84.   FIBERTEX has incurred and will continue to incur damages as a result of Defendants' wrongful conduct and their unauthorized use of the *Co'Coon* Mark.

85.     FIBERTEX has also incurred and will continue to incur irreparable harm unless preliminarily and permanently enjoined by this Court.

**WHEREFORE,** FIBERTEX requests this Court enter judgment against Defendants, and awarding FIBERTEX the following:

(1) a monetary judgment, for an amount equal to:

    a.   defendant's profits,

    b.   any damages sustained by the FIBERTEX,

    c.   reasonable attorney fees and costs in prosecuting the action, and

(2) punitive or exemplary damages because Defendants acted in willful, wanton and reckless disregard of FIBERTEX's rights, including its rights to the *Co'Coon* Marks and tradename, and

(3) a preliminary and permanent injunction together with the other relief requested in FIBERTEX's common prayer for relief set forth below.

### COUNT III
### 15 U.S.C. § 1125(d)
### (Cyberpiracy – NEW CONCEPTS, SANTIAGO, SEGARRA)

86.     FIBERTEX re-alleges paragraphs 1 – 69 as if fully set forth herein.

87.     FIBERTEX owns the *Co'Coon* Marks and tradename, which are entitled to protection.

88.     NEW CONCEPTS, SANTIAGO and SEGARRA registered, trafficked in, or used the domain name *Co'CoonShapers.com*.

89.     FIBERTEX's *Co'Coon* Mark and tradename were distinctive at the time that the *Co'CoonShapers.com* domain name was registered, and that domain name is identical or confusingly similar to the *Co'Coon* Mark and tradename.

90.     NEW CONCEPTS, SANTIAGO and SEGARRA redirected on-line consumers from CoCoonShapers.Com to Curveez.com.

91.     NEW CONCEPTS, SANTIAGO and SEGARRA intended to divert consumers seeking *Co'Coon* products, to Curveez.com—a site owned by NEW CONCEPTS, and which sells NEW CONCEPTS products under its *Curveez* mark.

92.     NEW CONCEPTS, SANTIAGO and SEGARRA committed such acts with a bad-faith intent to profit from the *Co'Coon* Mark and tradename.

93.     NEW CONCEPTS, SANTIAGO and SEGARRA's conduct harms the goodwill represented by FIBERTEX's *Co'Coon* Marks and tradname, as it creates a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site.

94.     FIBERTEX has incurred and will continue to incur damages as a result NEW CONCEPTS, SANTIAGO and SEGARRA's conduct.

95.     FIBERTEX has also incurred and will continue to incur irreparable harm unless NEW CONCEPTS, SANTIAGO and SEGARRA are preliminarily and permanently enjoined by this Court.

**WHEREFORE,** FIBERTEX requests this Court enter judgment against NEW CONCEPTS, SANTIAGO and SEGARRA, and awarding FIBERTEX the following:

(1) a monetary judgment, for an amount equal to

    a.   (i) Defendants' profits, (ii) any damages sustained by FIBERTEX, or

    b.   statutory damages pursuant to 15 U.S.C.A. § 1117(d), in the amount of not less than $1,000 and not more than $100,000 per domain name, and

(2) reasonable attorney fees and costs in prosecuting the action, and

(3) a preliminary and permanent injunction together with the other relief requested in FIBERTEX's common prayer for relief set forth below.

## COUNT IV
### § 501.204, Fla. Stat.
**(Florida's Deceptive and Unfair Trade Practices Act – All Defendants)**

96.     FIBERTEX re-alleges paragraphs 1 – 69 as if fully set forth herein.

97.     FIBERTEX owns the *Co'Coon* Marks and tradename, which are entitled to protection.

98.     Defendants misused the *Co'Coon* Marks and tradename in commerce, and Defendants made false or misleading descriptions of fact, and/or false or misleading representations of fact concerning *Co'Coon* and its affiliation to *Curveez* and NEW CONCEPTS; *to wit:*

a.  Defendants displayed *Co'Coon* products on *Curveez's* social media pages—instagram.com/curveezofficial;                    instagram.com/curveezrd; facebook.com/curveezofficial—and concealed the fact that these products were actually *Co'Coon* products;

b.  Defendants caused several on-line retail customers to use the *Co'Coon* Marks and tradename to sell *Curveez* products;

c.  Defendants removed the tags bearing the Co'Coon Mark from Co'Coon products, then re-tagged and re-packaged those products using the *Curveez* name;

d.  Defendants used images depicting *Co'Coon* products to sell or advertise *Curveez* and other NEW CONCEPTS products throughout several internet websites;

e.  Defendants redirected on-line consumers searching for *Co'Coon* shapewear products to websites and landing pages selling only *Curveez* products.

f.  Defendants are now manufacturing shapewear products and selling them under the *Curveez* mark, but the on-line product description for several *Curveez* products falsely state that the product was "[p]reviously known as: *Co'Coon . . .;*"

a.  Defendants have caused on-line retailers to use consumer reviews that correspond to *Co'Coon* products as if those reviews corresponded to Defendants' *Curveez* products;[3] and

g.  Defendants misrepresented to Shapermint.com or caused Shapermint.com to believe that "*Curveez* is the new name of *Co'Coon . . . .*"

99.  Additionally, Defendants conspired to steal and did steal FIBERTEX'S trade secreted information.  Then, using FIBERTEX'S trade secreted information, Defendants began manufacturing and selling shapewear products that are exact replicas or virtually indistinguishable copies of *Co'Coon* products. Moreover, to further the consumer confusion, Defendants' copied products use virtually identical style numbers, design finishes, price points, color schemes and size offerings, as the original *Co'Coon* products.  *See* **Exhibit 20** (comparing the *Co'Coon* products and the imitation product that is now being sold under the *Curveez* name).

100.  Defendants' foregoing conduct constitutes unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, which Defendants are committing in commerce.

101.  FIBERTEX has incurred and will continue to incur damages as a result of Defendants' wrongful conduct and their unauthorized use of the *Co'Coon* Mark.

102.  FIBERTEX has also incurred and will continue to incur irreparable harm unless preliminarily and permanently enjoined by this Court.

---

[3]      *See* Composite Exhibit 22.

**WHEREFORE,** FIBERTEX requests this Court enter judgment against Defendants, and awarding FIBERTEX the following:

(1) a monetary judgment, for an amount equal to actual damages sustained by FIBERTEX, plus reasonable attorneys' fees and costs in prosecuting the action, and

(2) a preliminary and permanent injunction together with the other relief requested in FIBERTEX's common prayer for relief set forth below.

<u>**COUNT V**</u>
**(Breach of Contract – NEW CONCEPTS)**

103.    FIBERTEX re-alleges paragraphs 1 – 69 as if fully set forth herein.

104.    Between May 6, 2019 and September 27, 2019, NEW CONCEPTS submitted a bevy of purchase orders to FIBERTEX for *Co'Coon* shapewear products. Attached hereto as **Exhibit 24** are the subject purchase orders NEW CONCEPTS submitted to FIBERTEX.

105.    In response to the Purchase Orders, FIBERTEX sent NEW CONCEPTS proforma invoices to NEW CONCEPTS, and shipped the products set forth in the proformas to NEW CONCEPTS. Attached hereto as **Exhibits 25A, 25B, and 25C** are the subject invoices sent to NEW CONCEPTS (the "Overdue Invoices").

106.    NEW CONCEPTS was required to pay the Overdue Invoices within 90 days of its receipt of each invoice and products.

107.    NEW CONCEPTS breached its contract with FIBERTEX by failing to pay each of the Overdue Invoices became due.

108.    To date, NEW CONCEPTS has not paid the Overdue Invoices.

109.    FIBERTEX has incurred damages as a result of Defendants' breach of contract; these damages include compensatory and consequential damages as well as costs, pre- and post-judgment interest and attorneys' fees.

110.     Currently, the amount due and owing on the Overdue InvoiceS is approximately $800,000, exclusive of costs, pre- and post-judgment interest and attorneys' fees.

111.     Additionally, Defendants spent a significant amount of money in purchasing new manufacturing equipment, increasing their work force, and making other investments to fulfill these orders and to fulfill future orders from Defendants.  FIBERTEX had a reasonable good faith expectation that their relationship with Defendants was going to continue based on their communications with Defendants; and, Defendants knew FIBERTEX was making these investments in equipment and labor to meet Defendants' demand for products. FIBERTEX should be able to recover the monies they have expended in this regard.

**WHEREFORE,** FIBERTEX requests this Court enter judgment against NEW CONCEPTS, and awarding FIBERTEX damages, including actual compensatory damages, and consequential damages sustained by FIBERTEX, plus reasonable attorneys' fees and costs in prosecuting the action, together with any other relief the Court deems just and proper.

<u>**COUNT VI**</u>
**18 U.S.C. 1836(b)(1)**
**(Misappropriation of Trade Secrets – All Defendants)**

112.     FIBERTEX re-alleges paragraphs 1 – 69 as if fully set forth herein.

113.     FIBERTEX owns valid trade secrets in:

a.   the specifications, patterns, methods, techniques, processes, procedures for designing *Co'Coon* products, and

b.   in the specifications, procedures, processes, formulas, methods, techniques, programs, or codes for manufacturing the *Co'Coon* products.

> c.  the specifications, procedures, processes, formulas, methods, techniques, programs, or codes for developing of software programs used to manufacture each product.

114.    FIBERTEX has taken reasonable measures to keep such trade secrets confidential.

115.    FIBERTEX derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, competitors or other third parties who can obtain economic value from the disclosure or use of the information.

116.    FIBERTEX competitors and other third parties cannot cannot readily discover FIBERTEX's trade secrets through proper means.

117.    RUIZ disclosed or used FIBERTEX's trade secrets without FIBERTEX's consent.

118.    NEW CONCEPTS, SANTIAGO, and SEGARRA acquired or used FIBERTEX's trade secrets without FIBERTEX's consent.

119.    Defendants knew or should have known that FIBERTEX's trade secrets were derived from or through a RUIZ,

> a.  who either stole FIBERTEX's trade secrets, or

> b.  who was under a duty to maintain the secrecy of or limit the use of FIBERTEX's trade secrets, or

> c.  who acquired FIBERTEX's trade secrets under circumstances giving rise to a duty to maintain the secrecy of FIBERTEX's trade secrets or limit the use of FIBERTEX's trade secrets.

120.    In late 2019, Defendants began using these trade secrets to design, manufacture, and sell shapewear products that are exact replicas or virtually indistinguishable copies of *Co'Coon* products.

121.    Defendants' conduct constitutes willful and malicious misappropriation of FIBERTEX's trade secrets.

122.    FIBERTEX has incurred and will continue to incur damages as a result of Defendants' misappropriation of trade secrets.

**WHEREFORE,** FIBERTEX requests this Court enter judgment against Defendants, and awarding plaintiffs the following:

(1) Compensatory damages in an amount that is, either,

a.   FIBERTEX's actual damages suffered as a result of Defendants' misappropriation of FIBERTEX's trade secrets; plus, Defendants' unjust enrichment that is a result of their misappropriation of FIBERTEX's trade secrets, even if that amount is more than the actual damages suffered by FIBERTEX, or

b.   A reasonable royalty to be paid to FIBERTEX for Defendants' unauthorized disclosure or use of FIBERTEX's trade secrets; and

(2) Exemplary damages, that is, damages meant to make an example of Defendants, which should be two times the amount awarded for compensatory damages, or an amount not more than two times the amount awarded for compensatory damages;

(3) Attorneys' fees, costs, and pre- or post- judgment interest; and

(4) a preliminary and permanent injunction together with the other relief requested in FIBERTEX's common prayer for relief set forth below.

## COUNT VII
### § 688.002, Fla. Stat
### (Misappropriation of Trade Secrets – All Defendants)

123. FIBERTEX re-alleges paragraphs 1 – 69 as if fully set forth herein.

124. FIBERTEX owns valid trade secrets in:

    a. the specifications, patterns, methods, techniques, processes, procedures for designing *Co'Coon* products, and

    b. in the specifications, procedures, processes, formulas, methods, techniques, programs, or codes for manufacturing the *Co'Coon* products.

    c. the specifications, procedures, processes, formulas, methods, techniques, programs, or codes for developing of software programs used to manufacture each product.

125. FIBERTEX has taken reasonable measures to keep such trade secrets confidential.

126. FIBERTEX derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, competitors or other third parties who can obtain economic value from the disclosure or use of the information.

127. FIBERTEX competitors and other third parties cannot readily discover FIBERTEX's trade secrets through proper means.

128. RUIZ disclosed or used FIBERTEX's trade secrets without FIBERTEX's consent.

129. NEW CONCEPTS, SANTIAGO, and SEGARRA acquired or used FIBERTEX's trade secrets without FIBERTEX's consent.

130. Defendants knew or should have known that FIBERTEX's trade secrets were derived from or through a RUIZ,

a. who either stole FIBERTEX's trade secrets, or

b. who was under a duty to maintain the secrecy of or limit the use of FIBERTEX's trade secrets, or

c. who acquired FIBERTEX's trade secrets under circumstances giving rise to a duty to maintain the secrecy of FIBERTEX's trade secrets or limit the use of FIBERTEX's trade secrets, or

131.    In late 2019, Defendants began using these trade secrets to design, manufacture, and sell shapewear products that are exact replicas or virtually indistinguishable copies of *Co'Coon* products.

132.    Defendants' conduct constitutes willful and malicious misappropriation of FIBERTEX's trade secrets.

133.    FIBERTEX has incurred and will continue to incur damages as a result of Defendants' misappropriation of trade secrets.

**WHEREFORE,** FIBERTEX requests this Court enter judgment against Defendants, and awarding plaintiffs the following:

(1) Compensatory damages in an amount that is, either,

a. FIBERTEX's actual damages suffered as a result of Defendants' misappropriation of FIBERTEX's trade secrets; plus, Defendants' unjust enrichment that is a result of their misappropriation of FIBERTEX's trade secrets, even if that amount is more than the actual damages suffered by FIBERTEX, or

b. A reasonable royalty to be paid to FIBERTEX for Defendants' unauthorized disclosure or use of FIBERTEX's trade secrets; and

(2) Exemplary damages, that is, damages meant to make an example of Defendants, which should be two times the amount awarded for compensatory damages, or an amount not more than two times the amount awarded for compensatory damages;

(3) Attorneys' fees, costs, and pre- or post- judgment interest; and

(4) A preliminary and permanent injunction together with the other relief requested in FIBERTEX's common prayer for relief set forth below.

## COUNT VIII
### (Florida's Common Law Unfair Competition – All Defendants)

134.    FIBERTEX re-alleges paragraphs 1 – 69 as if fully set forth herein.

135.    FIBERTEX owns the *Co'Coon* Marks and tradename, which are entitled to protection.

136.    Defendants misused the *Co'Coon* Marks and tradename in commerce, and Defendants made false or misleading descriptions of fact, and/or false or misleading representations of fact concerning *Co'Coon* and its affiliation to *Curveez* and NEW CONCEPTS; *to wit:*

    a.  Defendants displayed *Co'Coon* products on *Curveez*'s social media pages—instagram.com/curveezofficial; instagram.com/curveezrd; facebook.com/curveezofficial—and concealed the fact that these products were actually *Co'Coon* products;

    b.  Defendants caused several on-line retail customers to use the *Co'Coon* Marks and tradename to sell *Curveez* products;

    c.  Defendants removed the tags bearing the *Co'Coo*n Mark from *Co'Coon* products, then re-tagged and re-packaged those products using the *Curveez* name;

d. Defendants used images depicting *Co'Coon* products to sell or advertise *Curveez* and other NEW CONCEPTS products throughout several internet websites;

e. Defendants redirected on-line consumers searching for *Co'Coon* shapewear products to websites and landing pages selling only *Curveez* products.

f. Defendants are now manufacturing shapewear products and selling them under the *Curveez* mark, but the on-line product description for several *Curveez* products falsely state that the product was "[p]reviously known as: *Co'Coon* . . .;"

g. Defendants have caused on-line retailers to use consumer reviews that correspond to *Co'Coon* products as if those reviews corresponded to Defendants' *Curveez* products;[4] and

h. Defendants misrepresented to Shapermint.com or caused Shapermint.com to believe that "*Curveez* is the new name of *Co'Coon* . . . ."

137. Additionally, Defendants conspired to steal and did steal FIBERTEX'S trade secreted information. Then, using FIBERTEX'S trade secreted information, Defendants began manufacturing and selling shapewear products that are exact replicas or virtually indistinguishable copies of *Co'Coon* products. Moreover, to further the consumer confusion, Defendants' copied products use virtually identical style numbers, design finishes, price points, color schemes and size offerings, as the original *Co'Coon* products. *See* Exhibit 20 (comparing the *Co'Coon* products and the imitation product that is now being sold under the *Curveez* name).

138. Defendants' foregoing conduct constitutes unfair methods of competition.

139. FIBERTEX has incurred and will continue to incur damages as a result of Defendants' wrongful conduct and their unauthorized use of the *Co'Coon* Mark.

---

[4] *See* Composite Exhibit 22

140.    FIBERTEX has also incurred and will continue to incur irreparable harm unless preliminarily and permanently enjoined by this Court.

**WHEREFORE,** FIBERTEX requests this Court enter judgment against Defendants, and awarding FIBERTEX the following:

(1) a monetary judgment, for an amount equal to actual damages sustained by FIBERTEX, plus reasonable attorneys' fees and costs in prosecuting the action, and

(2) a preliminary and permanent injunction together with the other relief requested in FIBERTEX's common prayer for relief set forth below.

### Prayer for Relief Common to All Counts (Except Count V)

**WHEREFORE**, in addition to above-requested relief, FIBERTEX requests this Court enter judgment against Defendants, setting forth as follows:

(1) A preliminary and permanent injunction to be issued enjoining Defendants, their employees, agents, successors and assigns, and all those in active concert and participation with Defendants, and each of them who receives notice directly or otherwise of such injunctions, from:

a.  imitating, copying, or making unauthorized use of any of the *Co'Coon* Marks or tradename, counterfeits thereof, or any confusingly similar variations thereof;

b.  importing, manufacturing, producing, distributing, circulating, selling, offering for sale, advertising, promoting or displaying any service or product using any simulation, reproduction, counterfeit, copy, or any confusingly similar variation of any of the *Co'Coon* Marks or tradename;

c.  using any simulation, reproduction, counterfeit, copy or confusingly similar variation of the *Co'Coon* Marks or tradename in connection with the promotion,

advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of any service or product;

d.   using any false designation of origin or false description, including without limitation, any letters or symbols constituting the *Co'Coon* Marks or tradename or performing any act which can or is likely to lead members of the trade or public to believe that Defendants and/or any service or product manufactured, distributed or sold by Defendants is in any manner associated or connected with the *Co'Coon* Marks or tradename or is sold, manufactured, licensed, sponsored, approved or authorized by the *Co'Coon* Marks or tradename;

e.   transferring, consigning, selling, shipping or otherwise moving any goods, packaging or other materials in Defendants' possession, custody or control bearing a design or mark substantially similar to any of the *Co'Coon* Marks or tradename;

f.   instructing, assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (e) above;

(2) For an order enjoining Defendants from selling, distributing, discarding, giving away or otherwise disposing of Defendants' goods bearing counterfeits of the *Co'Coon* Marks or tradename, and requiring Defendants to sequester said counterfeit goods, including without limitation, shapewear products, packaging, advertisements, marketing or promotional materials, or other goods bearing the *Co'Coon* Marks or tradename, in a separate and safe location at Defendants' place or places of business, as well as all business records related thereto, including any computers or other digital

media containing such business records to be made available for FIBERTEX and their representatives to examine, photograph, and/or copy any such goods and information;

(3) For an order directing Defendants to deliver to FIBERTEX and its counsel for destruction all products, labels, tags, signs, prints, packages, videos, and advertisements in their possession or under their control, bearing or using any or all of the *Co'Coon* Marks or tradename or any confusingly similar variation thereof, and all plates, molds, matrices and other means of making the same, pursuant to 15 U.S.C. § 1118;

(4) For an order directing such other relief as the Court may deem appropriate to prevent consumers and public in general from deriving the erroneous impression that any service or product manufactured, sold or otherwise circulated or promoted by Defendants is authorized by FIBERTEX or *Co'Coon* or related in any way to FIBERTEX or *Co'Coon's* products;

(5) For an order directing Defendants to file with the Court and serve upon FIBERTEX's counsel within thirty (30) days after entry of such judgment, a report in writing under oath, setting forth in detail the manner and form in which Defendants have complied with the above;

(6) For an order requiring Defendants to file with the Court and provide to FIBERTEX an accounting of all sales and profits realized through Defendants' use of the *Co'Coon* Marks or tradename and any counterfeits thereof;

(7) For an order permitting FIBERTEX, and/or auditors for FIBERTEX, to audit and inspect the books and records of Defendants for a period of six months after entry of final relief in this matter to determine the scope of Defendants' past use of the *Co'Coon* Marks or

tradename, including all revenues and sales related to Defendants' use of the *Co'Coon* Marks or tradename, as well as Defendants' compliance with orders of this Court; and

(8) For any other relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil procedure, FIBERTEX respectfully requests a trial by jury of all issues properly triable by jury.

Date: February 19, 2020

Respectfully Submitted:

BELL ROSQUETE REYES ESTEBAN, PLLC
Attorneys for Plaintiff
999 Ponce De Leon Blvd., Suite 1120 PH
Miami, Florida 33134
Telephone: (305) 570-1610
Facsimile: (305) 570-1599
aesteban@brresq.com
jreyes@brresq.com
arosquete@brresq.com

By: */s/ Alexander Esteban*
Alexander Esteban, Esq.
Florida Bar No. 107491
Javier A. Reyes, Esq.
Florida Bar No. 688487
Armando Rosquete, Esq.
Florida Bar No. 648434