UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(MIAMI DIVISION)

FIBERTEX CORPORATION,
a foreign corporation

Case No. 20-cv-20720-RNS

    Plaintiff,

v.

NEW CONCEPTS DISTRIBUTORS
INT'L, LLC, f/k/a NEW CONCEPTS
DISTRIBUTORS, INC., a Florida
limited liability company; JANICE
SANTIAGO, an individual; RAFAEL
G. SEGARRA, an individual; MARIO
RUIZ, an individual;

    Defendants.

_____/

**PLAINTIFF FIBERTEX'S MOTION FOR PRELIMINARY INJUNCTION AND
INCORPORATED MEMORANDUM OF LAW**

    Plaintiff, Fibertex Corporation ("Fibertex"), through its undersigned counsel, pursuant to Rule 65, Fed. R. Civ. P., and 15 U.S.C. §1115, files this motion for preliminary injunction ("Motion") against Defendants, New Concepts Distributors Int'l, LLC, f/k/a New Concepts Distributors, Inc. ("New Concepts"), Janice Santiago ("Santiago"), Rafael G. Segarra ("Segarra"), and Mario Ruiz ("Ruiz") (collectively the "Defendants"), and states as follows:

### INTRODUCTION

    Plaintiff, Fibertex, manufactures and sells compression-shapewear garments under the trademark and tradename, "*Co'Coon*." Compression-shapewear garments are worn by women and men to provide slimming, tightening, and body sculpting effects. Shapewear is a popular and a growing segment of the fashion industry in the United States, and *Co'Coon's* popularity has similarly increased over the last several years.

    After years of acting as a distributor of *Co'Coon* products in the United States, Defendant New Concepts—acting through its officers and agents Santiago, Segarra, and Ruiz—unlawfully seized upon the growing popularity of the *Co'Coon* brand. Defendants engaged in a deliberate, systematic, and comprehensive scheme to build its own *Curveez* brand through misuse of

1

Fibertex's *Co'Coon* marks and other unlawful means. For example, Defendants (i) misused the *Co'Coon* marks to pass-off New Concepts' own products as if they were *Co'Coon*, (ii) removed *Co'Coon* tags from *Co'Coon* products and replaced them with a tag bearing their *Curveez* mark, (iii) promoted Defendant's *Curveez* products—which are knock-offs of Fibertex's *Co'Coon* products—through on-line product descriptions stating the *Curveez* product was "[p]reviously known as: *Co'Coon*," and (iv) redirected on-line consumers searching for *Co'Coon* products to websites selling the competing *Curveez* products. Through these and other actions discussed below, Defendants syphoned *Co'Coon's* customers, unlawfully profited from the *Co'Coon* mark, and built their competing *Curveez* mark on the back of *Co'Coon's* recognition and goodwill of *Co'Coon*. A preliminary injunction against Defendants is necessary to prevent further misappropriation of the *Co'Coon* marks and tradename and to stop further consumer confusion.

## FACTS SUPPORTING THE ISSUANCE OF PRELIMINARY INJUNCTION[1]

### A. FIBERTEX AND ITS *CO'COON* MARKS

1. For 20 years, Fibertex (a Colombian corporation) has manufactured and exported compression shapewear garments to the United States under the ***Co'Coon*** mark. *Ex. 1*, at ¶¶ 5-7.

2. Fibertex owns the following *Co'Coon* trademarks, which are registered or pending registration, on the U.S. Patent and Trademark Office's Principal Register:

| Trademark | Serial No. / Registration No. | Application Date / Registration Date | Classes / Goods |
|---|---|---|---|
| *Co'Coon*[2] | 77-868,952 / 3,949,789 | November 10, 2009 / April 26, 2011 | IC 025 – Foundation garments worn around the midsection or thighs to keep the stomach in and create a slimming effect. |
| CO'COON[3] Beautiful. Comfortable. You. | 88-520,002 / Pending | July 17, 2019 / Pending | IC 025 – Foundation garments worn around the midsection or thighs to keep the stomach in and create a slimming effect. |

---

[1] The facts supporting this Motion are supported by the Declarations of Cesar Soto, Fibertex's General Manager and Alejandra Angel, Fibertex's Key Account Manager. These Declarations are attached hereto as **Exhibit 1** and **Exhibit 2**, respectively.
[2] This mark shall be referred to as "*Co'Coon* Word Mark."
[3] This mark shall be referred to as the "Composite *Co'Coon* Mark." (Hereinafter the *Co'Coon* Mark and the Composite *Co'Coon* Mark will be referred to collectively as the "*Co'Coon* Marks").

*Ex. 1*, at ¶ 9; *See also* [DE 1-1, 1-2]. The *Co'Coon* Word Mark was first used in U.S. interstate commerce on June 1, 2000, while the Composite *Co'Coon* Mark was first used in U.S. interstate commerce in 2016. *Ex. 1*, at ¶ 10.

### B. FIBERTEX AND NEW CONCEPTS' DISTRIBUTION RELATIONSHIP

3. From 2006 to 2019, New Concepts was a distributor of *Co'Coon* products in the U.S. As a distributor, New Concepts had an implied license to use the *Co'Coon* Marks and name to promote and advertise *Co'Coon* products. *Ex. 1*, at ¶¶ 11-12.

4. In or around late 2015, New Concepts began selling abdominal waistbands (*a/k/a* waist trainers), which New Concepts manufactured, under its brand: "*Curveez*." *Ex. 1*, at ¶¶ 14-15. Fibertex did not object to this because the *Curveez*-branded waistband products did not compete with Fibertex's shapewear products. *Ex. 1*, at ¶ 15.

5. Between 2016 and 2018, Fibertex's new management team invested in the growth of the *Co'Coon* brand in the U.S. To that end, Fibertex hired consultants to improve existing *Co'Coon* products and develop new products targeted to U.S. consumers; Fibertex also purchased new manufacturing equipment and increased its labor force to increase output capabilities and meet growing product demand in the U.S. As a result, sales revenues for *Co'Coon* products in the U.S. grew by over 500% from 2016 to 2019. *Ex. 1*, at ¶¶ 16, 18.

6. From 2015 to 2019, Fibertex supplied New Concepts with 61 different *Co'Coon* product types to sell throughout the U.S. *Ex. 1*, at ¶¶ 17.

### C. DEFENDANTS' UNFAIR METHODS OF COMPETITION AND UNAUTHORIZED USE OF THE *CO'COON* MARKS AND TRADE NAME

7. Unbeknownst to Fibertex's new management, Defendants were a fox in the hen house. As Fibertex was investing in the growth of *Co'Coon* in the U.S. market, Defendants were not only distributing *Co'Coon* products, but also intentionally and methodically taking steps to (a) deceive shapewear vendors into believing that New Concepts owned the *Co'Coon* Mark,[4] (b) create a false sense of affiliation, connection or association between the *Co'Coon* Marks and New

---

[4] *See* DE 1-21 (an Instagram post from Shapermint.com, wherein Shapermint.com is stating that "*Curveez* is the new name of *Co'Coon* . . .")." Defendants misrepresented this to Shapermint.com, who is one of New Concepts' on-line retail customers. *Ex. 2,* at ¶ 29.

3

Concepts' *Curveez* mark, and (c) syphon Fibertex's consumers through unfair methods of competition. Below, we describe several of these instances:

### i. The False Declaration of Incontestability

8.  On January 21, 2019, without Fibertex's authority, Santiago filed with the USPTO a Declaration of Incontestability of the *Co'Coon* Mark (the "False Declaration of Incontestability"), which falsely identifies New Concepts as the new "proposed owner," that was to replace Fibertex as the owner of the *Co'Coon* Mark. *Ex. 1*, at ¶¶ 19-20; *see also* [DE 1-3].

9.  Fibertex did not learn about the False Declaration of Incontestability until July 5, 2019, when the USPTO notified Fibertex's attorneys of the False Declaration of Incontestability, which the USPTO had rejected because Santiago failed to show that the proper chain of title necessary to transfer ownership of the *Co'Coon* Mark from Fibertex to New Concepts. *Ex. 1*, at ¶¶ 19, 21; *see also* [DE 1-4] (USPTO's rejection of the False Declaration of Incontestability). That same day, Fibertex's Attorneys filed a new Declaration of Incontestability (the "Real Declaration of Incontestability")—not believing, at the time, that New Concepts would purposefully make such a blatantly false statement to the USPTO, Fibertex stated that the False Declaration of Incontestability "was made in error and should be voided." *Ex. 1*, at ¶¶ 23; *see also* [DE 1-5] (Fibertex's Real Declaration of Incontestability).

### ii. Defendants Removed the Co'Coon Marks from Co'Coon Products, then Re-Tagged and Re-Packaged them Using the Curveez Mark, and Sold them Through the Shapermint.com Website

10. On November 2, 2019, Alejandra Angel, a Key Account Manager at Fibertex, visited the Shapermint.com, which is an on-line retailer to whom New Concepts regularly distributed *Co'Coon* products. *Ex. 2*, at ¶¶ 1-5.

11. On the Shapermint.com website, Ms. Angel ordered four products that appeared to be among Fibertex's best-selling *Co'Coon* products, but Defendants were actively promoting and selling under its competing *Curveez* name; these products were: (a) "*Curveez* Second Skin Hip Hugger Bodysuit," (b) "*Curveez* Incredibly Shaping Cami," (c) "*Curveez* Ever Sexy Bodyshort," and (d) "*Curveez* Signature Control High Waist Brief." *Ex. 2*, at ¶ 6. Upon receipt of these products from Shapermint.com, Fibertex confirmed that they were in fact *Co'Coon* products that had been re-tagged and re-packaged using the *Curveez* name. *Ex. 1*, at ¶ 24; *Ex. 2*, at ¶ 7.

12. On November 26, 2019, Fibertex purchased another six products from Shapermint.com, which were being sold under the *Curveez* name. *Ex. 2*, at ¶13. Upon receipt of these products, Fibertex confirmed that some of the products were in fact *Co'Coon* products that had been re-tagged and re-packaged as *Curveez*, and others were copycat *Co-Coon* products being manufactured and distributed under the *Curveez* name. *Ex. 1*, at ¶ 27; *Ex. 2*, at ¶¶ 14-15.

### iii. Defendants Infringed on the Co'Coon Marks and Passed Off New Concepts Products as if they were Co'Coon

13. New Concepts used the *Co'Coon* Marks and name to sell or advertise its own products throughout several internet websites, such as (a) Classicshapewear.com [DE 1-10]; (b) Shapewearusa.com [DE 1-11]; (c) Mytotaldesire.com [DE 1-12]; (d) Ebay.com [DE 1-13]; (e) bonanza.com [DE 1-14]; and (f) thefamouscurves.com [DE 1-15]. *Ex. 2*, at ¶¶ 17-20. For ease of reference, below is a screenshot of the Classicshapewear.com website as it appeared on January 10, 2020, which illustrates Defendants' misuse of the *Co'Coon* Marks and name:



*Ex. 2,* at ¶ 18; [DE 1-10, at 2]. **The waist cincher depicted here is <u>not</u> a *Co'Coon* product,** but it was being promoted and sold using the *Co'Coon* Marks. Notably, the "Style #" for this product begins with "CUR," signifying that this is a *Curveez* product; yet, it is being sold as if it was *Co'Coon*. *Ex. 2,* at ¶ 18.

### iv. *Defendants Reverse Passed Off Fibertex's Co'Coon Products under the Curveez Mark and name*

14. Defendants engaged in reverse-passing-off by selling and promoting Fibertex's *Co'Coon* products under the *Curveez* name on several websites. *Ex. 2*, at ¶¶ 21-23; *see e.g.* [DE 1-16], [DE 1-17], [DE 1-18] (examples of Defendants' reverse passing off on Shapewearusa.com, @curveezwomen, and Curveez.com, respectively). To illustrate, below is a screenshot of the Shapewearusa.com website, as it appeared on January 10, 2020; **the high waisted capri depicted here is a *Co'Coon* product,** but it was promoted and sold under the *Curveez* name:



*Ex. 2*, at ¶ 23; [DE 1-16, at 23]. Notably, the "SKU" or style number begins with "COC," which signifies this is a *Co'Coon* product. *Ex. 2*, at ¶ 23.

15. Also, Defendants misled consumers by selling and promoting Fibertex's *Co'Coon* products without identifying them as *Co'Coon* products, leaving consumers unable to identify the source of the products. Often, these un-marked *Co'Coon* products were sold and promoted next to *Curveez*-marked products, which exacerbated the likelihood of confusion. This conduct occurred or is occurring on curveez.com [DE 1-18] or feelfoxy.com [DE 1-19]. *Ex. 2*, at ¶¶ 24-26.

6

      v.      ***Defendants intentionally structured New Concepts' internet advertisements and sales to deceive consumers into believing that there is an association or affiliation between the Co'Coon and Curveez.***

16. Defendants used false and misleading product descriptions to sell *Curveez* products on Shapermint.com. Specifically, the product description for several *Curveez* products on Shapermint.com, falsely state that the product was "[p]reviously known as: *Co'Coon* . . ." [DE 1-23 at 2, 4, 6, 8, 10]; *see also Ex. 2*, at ¶ 27.

17. Also, Defendants used the on-line consumers' reviews of *Co'Coon* products to promote and sell their *Curveez* products, which misleads consumers into believing that *Co'Coon* products are affiliated with *Curveez* products. *See e.g.* [DE 1-22]; *see also Ex. 2*, at ¶ 28.

      vi.      ***Defendants Engaged in Cyberpiracy, redirecting on-line consumers searching for Co'Coon shapewear products to internet pages promoting Curveez products***

18. Defendants redirected on-line consumers searching for *Co'Coon* shapewear products to websites and landing pages selling only competing *Curveez* products:

      a.      ***Cyberpiracy Example 1.*** In or around 2011, Fibertex permitted New Concepts to create a website with the domain name **CoCoonShapers.com**, where New Concepts could sell *Co'Coon* products directly to consumers at retail prices. *Ex. 1*, at ¶13. From approximately 2012 to 2018, New Concepts sold *Co'Coon* products through CoCoonShapers.com. *Ex. 1*, at ¶ 13. However, in late 2019 or early 2020, Defendants began re-directing consumers intending to visit CoCoonShapers.Com to the Curveez.com website, where consumers can purchase *only Curveez* products. *Ex. 1*, at ¶ 30(a); *Ex. 2*, at ¶ 30(a).

      b.      ***Cyberpiracy Example 2.*** A Google search for "Cocoon Shapewear" populates a list of links, which includes a link titled "Co'Coon Shapewear | Shapermint"; that link has the web-address https://shapermint.com/collections/co-coon. Consumers clicking this link expect to be taken to a landing page displaying *Co'Coon* products being sold through the Shapermint.Com website. However, clicking this link takes consumers to the "*Curveez*" landing page on Shapermint.com, which has the web address https://shapermint.com/collections/curveez, where only *Curveez* products are sold and promoted. Upon information and belief, New Concepts instructed or caused Shapermint to re-direct consumers looking for *Co'Coon* products to Shapermint's landing page for *Curveez* products. *Ex. 1*, at ¶ 30(a); *Ex. 2*, at ¶ 30(a).

D. **DEFENDANTS STOLE FIBERTEX'S TRADE SECRET INFORMATION AND USED IT TO MANUFACTURE PRODUCTS THAT ARE VIRTUALLY IDENTICAL TO *Co'Coon* PRODUCTS**

19.     In or around 2018, New Concepts hired Ruiz, who Santiago and Segarra knew had been a long-time employee of Fibertex. *Ex. 1*, at ¶ 36. Defendant Ruiz served as Fibertex's operations manager, among other positions he held over the years. *Ex. 1*, at ¶ 32. In addition to having been a Fibertex employee, Ruiz owned a dress-making workshop in Colombia, where Fibertex would sew certain *Co'Coon* product types. *Ex. 1*, at ¶ 33.

20.     As Fibertex's operations manager and manufacturer, Ruiz had access to and learned confidential trade secret information that belongs to Fibertex, which Fibertex took reasonable measures to maintain secret or confidential. Specifically, Ruiz learned the specifications, procedures, and methods for producing various *Co'Coon* products which include but are not limited to the design elements of each product (i.e. the fabric or thread type, thread count, weave, elasticity specification for different fabrics, degrees of compression, tinting and color, etc.), the development of software programs used in the knitting process, the techniques for programming and adjusting manufacturing equipment to achieve the desired finishes and feel to products, as well as other confidential information. Ruiz was also privy to Fibertex's suppliers. (Collectively, the information in this paragraph is referred to as "Fibertex's Trade Secrets"). *Ex. 1*, at ¶ 34.

21.     In late 2019, New Concepts began manufacturing and selling shapewear products that are exact replicas or virtually indistinguishable copies of *Co'Coon* products. New Concepts is selling these knock off *Co'Coon* products under the *Curveez* name. To further the consumer confusion, *Curveez* uses virtually identical style numbers, design finishes, price points, color schemes, and size offerings. *Ex. 1*, at ¶ 37; *see also* [DE 1-20] (an illustration comparing the *Co'Coon* products and *Curveez's* imitation product).

22.     On information and belief, Ruiz specifically used the Fibertex's Trade Secrets to create copy-cat *Curveez* products that have the look and, more importantly, the feel and comfort associated with *Co'Coon* products. *Ex. 1*, at ¶ 38.

## ARGUMENT

I.     **FIBERTEX IS ENTITLED TO A PRELIMINARY INJUNCTION**

In trademark cases, preliminary injunctions are routinely granted because of the presumption that "trademark infringement by its nature causes irreparable harm." *Levi Strauss &*

8

*Co. v. Sunrise Int'l Trading Inc.,* 51 F.3d 982, 986 (11th Cir. 1995); *McDonald's Corp. v. Robertson,* 147 F.3d 1301, 1310 (11th Cir. 1998) ("trademark actions are common venues for the issuance of preliminary injunctions"). Similarly, preliminary injunctions are commonly used to prevent the "actual or threatened misappropriation" of trade secrets under the Federal Defend Trade Secrets Act (DTSA) and Florida's Uniform Trade Secrets Act (FUTSA). *Hayes Healthcare Services, LLC v. Meacham*, 2019 WL 2637053, at *3 (S.D. Fla. Feb. 1, 2019) (*citing* 18 U.S.C. § 1836(b)(3)(A)(i) and § 688.003, Fla. Stat.).

"To obtain a preliminary injunction, a party must demonstrate '(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest.'" *Chanel, Inc. v. Individual, P'ship , or Unincorporated Ass'n*, 2018 WL 10374695, at *3 (S.D. Fla. July 10, 2018) (*quoting Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005). "In ruling on a preliminary injunction, the Court makes preliminary findings of fact. At this stage, the evidentiary rules are relaxed. A court may rely on affidavits and hearsay materials that would not be admissible evidence for a permanent injunction, so long as the evidence is appropriate given the character and purpose of the injunction proceedings. It may utilize written materials that are in the record." *Steen-Jorgensen v. Bullguard Americas LLC,* 2013 WL 12100868, at *3 (S.D. Fla. July 1, 2013) (citing *Levi Strauss & Co.*, 51 F.3d at 985).

### (1) FIBERTEX IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIMS

The claims pursuant to which Fibertex seeks injunctive relief fall into three general categories: (1) Trademark and Unfair Competition Claims (Counts I, II, IV and VIII);[5] (2) Cyberpiracy (Count III); and (3) Misappropriation of Trade Secret (Counts VI and VII).

---

[5] Count IV (Florida's Deceptive and Unfair Trade Practices Act, § 501.204, Fla. Stat.) is grouped with the counts for Federal trademark infringement and unfair competition because "the law long has recognized that trademark infringement and unfair competition are considered to be unfair and deceptive trade practices in violation of FUTPA." *Pepsico, Inc. v. Distribuidora La Matagalpa, Inc.*, 510 F. Supp. 2d 1110, 1114 (S.D. Fla. 2007) (*citing Laboratorios Roldan v. Tex Int'l, Inc.,* 902 F.Supp. 1555, 1569–70 (S.D.Fla.1995) (explaining that intentionally palming off or passing off products is the type of behavior that FUTPA prohibits). Accordingly, we limit our analysis to the Federal claims.

### A. LIKELIHOOD OF SUCCESS ON TRADEMARK AND UNFAIR COMPETITION CLAIMS

***Trademark Infringement.*** To succeed on a claim for trademark infringement under 15 U.S.C. § 1114, the plaintiff must show that: (1) plaintiff owns a valid registered trademark; (2) defendant used the mark in commerce and without the plaintiff's consent; and (3) defendant's use of the mark is likely to cause confusion, mistake, or deception as to the source, affiliation, or sponsorship of the defendant's goods. *Steen-Jorgensen,* 2013 WL 12100868, at *8. Here, Fibertex has owned the registered *Co'Coon* Word Mark since April 26, 2011. New Concepts used the *Co'Coon* Word Mark to sell its own shapewear garments on websites, such as Classicshapewear.com [DE 1-10] and Shapewearusa.com [DE 1-11] which constitutes an unauthorized use of the *Co'Coon* Word Mark in commerce.

Having satisfied the first two factors, courts look to the following factors to determine whether New Concepts' use of the mark causes a likelihood of confusion: "(1) the strength of the plaintiff's mark;[6] (2) the similarity between the plaintiff's mark and the allegedly infringing mark; (3) the similarity between the products and services offered by the plaintiff and defendant; (4) the similarity of the sales methods; (5) the similarity of advertising methods; (6) the defendant's intent, e.g., does the defendant hope to gain competitive advantage by associating his product with the plaintiff's established mark; and (7) actual confusion." *All. Metals, Inc., of Atlanta v. Hinely Indus., Inc.,* 222 F.3d 895, 907 (11th Cir. 2000). Determining whether a likelihood of confusion exists is not a monolithic computation of these factors; rather, district courts must evaluate the factors, weigh them, and make an ultimate decision. *Jellibeans, Inc. v. Skating Clubs of Georgia, Inc.,* 716 F.2d 833, 840 n.17 (11th Cir. 1983). In fact, "[there is no need to analyze each of these factors in

---

[6] The strength of a mark depends on which of four categories of distinctiveness the mark falls under; we list these categories in ascending order of strength: "(1) generic—marks that suggest the basic nature of the product or service; (2) descriptive—marks that identify the characteristic or quality of a product or service; (3) suggestive—marks that suggest characteristics of the product or service and require an effort of the imagination by the consumer in order to be understood as descriptive; and (4) arbitrary or fanciful—marks that bear no relationship to the product or service, and the strongest category of trademarks." *Tana v. Dantanna's,* 611 F.3d 767, 774 (11th Cir. 2010). "Suggestive and arbitrary or fanciful marks are deemed 'inherently distinctive' because 'their intrinsic nature serves to identify a particular source of a product' and are generally entitled to trademark protection. *Tana,* 611 F.3d at 774 (*quoting Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 768 (1992)).

every case ... because consideration of fewer than all seven factors can support a finding of likelihood of confusion." *Monsanto Co. v. Campuzano,* 206 F. Supp. 2d 1252, 1262 (S.D. Fla. 2002), *modified,* 206 F. Supp. 2d 1270 (S.D. Fla. 2002); *accord. Univ. of Georgia Athletic Ass'n v. Laite,* 756 F.2d 1535, 1543 (11th Cir. 1985) (holding that a court need not specifically mention each of the seven factors to avoid reversal on appeal). Notwithstanding these factors, "a presumption of public confusion arises when counterfeit symbols are substantially identical to genuine symbols and are used in the same manner as the genuine symbols are used"—as is the case here. *Monsanto Co*., 206 F. Supp. 2d at 1262; (*citing Polo Fashions v. Craftex, Inc.* 816 F.2d 145, 148 (4th Cir.1987).

Here, there is a presumption of public confusion because Defendants are using the *Co'Coon* Word Mark to sell New Concepts' *Curveez* products. And, even if we were to evaluate the likelihood of confusion factors, the same conclusion is reached: There is a likelihood of consumer confusion because Defendants used the *Co'Coon* Word Mark to sell competing shapewear products on the same websites where *Co'Coon* products were sold; moreover, Defendants intended to gain a competitive advantage by associating its products with Fibertex's established *Co'Coon* marks (i.e. Defendants used consumers' reviews of *Co'Coon* products to sell competing *Curveez* products). In fact, there is evidence of actual confusion—Shapermint.com, shapewear retailer, announced that "*Curveez* is the new name of *Co'Coon"* because that is what Defendants led them to believe. [DE 1-21].

***Infringement of Unregistered Trademarks.*** Section 43(a) of the Lanham Act forbids infringement of unregistered trademarks. *Planetary Motion, Inc. v. Techsplosion, Inc.,* 261 F.3d 1188, 1193 (11th Cir. 2001) (*citing Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 768 (1992)). "To prevail under this section, a claimant must show (1) that it had prior rights to the mark at issue and (2) that the defendant had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." *Planetary Motion, Inc.,* 261 F.3d at 1193 (11th Cir. 2001). *Accord. Louis Vuitton Malletier v. Beltteen*, 2018 WL 7144485, at *2 (S.D. Fla. Dec. 11, 2018) (same factors showing Plaintiff's likelihood of success on federal trademark claims demonstrate likely success on their common-law claims for unfair competition and trademark infringement).

Here, Fibertex has prior-use rights to the *Co'Coon* Composite Mark, which it started using in interstate commerce in 2016. Defendants used the *Co'Coon* Composite Mark to sell New

Concepts' own shapewear garments on websites, such as Classicshapewear.com [DE 1-10], which constitutes an unauthorized use of the *Co'Coon* Composite Mark in commerce. Defendants' use of the *Co'Coon* Composite Mark is likely to cause confusion for all of the same reasons as discussed above regarding Defendants' use of the *Co'Coon* Word Mark.

***Unfair Competition / False Designation of Origin.*** Section 43(a) of the Lanham Act prohibits misrepresentations as to the source of a product, which is referred to as "'passing off' (also called 'palming off') and "'reverse passing off." *Waldman Pub. Corp. v. Landoll, Inc.,* 43 F.3d 775, 780 (2d Cir. 1994).

Passing off occurs when "the defendant sells its products under the plaintiff's name." *Del Monte Fresh Produce Co. v. Dole Food Co., Inc.,* 136 F. Supp. 2d 1271, 1284 (S.D. Fla. 2001); *accord. Roho, Inc. v. Marquis,* 902 F.2d 356, 359 (5th Cir.1990) (passing off is when "'A' sells its product under 'B's' name"); *cf. Turner Greenberg Associates, Inc. v. C & C Imports, Inc.,* 320 F. Supp. 2d 1317, 1333–34 (S.D. Fla. 2004), aff'd, 128 Fed. Appx. 755 (11th Cir. 2005) (passing off also occurs when a consumer orders plaintiff's product expecting to receive plaintiff's product, but defendant sends the consumer its own product instead). Here, Defendants engaged in passing off in a number of ways. First, New Concepts sold its products using the *Co'Coon* name on Classicshapewear.com [DE 1-10], Shapewearusa.com [DE 1-11], Mytotaldesire.com [DE 1-12], Ebay.com [DE 1-13], bonanza.com [DE 1-14], thefamouscurves.com [DE 1-15]; this is the textbook definition of passing off. Second, New Concepts selling its *Curveez* products while using *Co'Coon's* consumers' reviews as if they were reviews of the *Curveez* products [DE 1-22] constitutes passing off because it tends to confuse consumers as to the source of the products or as to the affiliation between *Co'Coon* and *Curveez.*

Reverse passing off occurs when a "defendant sells the plaintiff's product under the defendant's name." *Del Monte Fresh Produce Co.,* 136 F. Supp. 2d at 1284; *accord. Waldman Pub. Corp.,* 43 F.3d at 780 (reverse passing off is when "'A' sells 'B's' product under 'A's' name"). "The typical reverse palming off case involves a situation where the defendant acquires a product manufactured by the plaintiff, removes the plaintiff's mark, affixes the defendant's mark, and sells it as the defendant's product." *Del Monte Fresh Produce Co.,* 136 F. Supp. 2d at 1284. Here, Defendants engaged in passing off when they removed the *Co'Coon* tags from *Co'Coon* products, then re-tagged and re-packaged using the *Curveez* name, and sold the products through Shapermint.com. Defendants also engaged in reverse passing when they sold and promoted

*Co'Coon* products under the *Curveez* name on Shapewearusa.com [DE 1-16], on Instagram account @curveezwomen [DE 1-17], and Curveez.com [DE 1-18]. For the reasons discussed above, this conduct is likely to confuse consumers as to the source of the products or as to the affiliation between *Co'Coon* and *Curveez*.

### B. <u>LIKELIHOOD OF SUCCESS ON THE CYBERPIRACY CLAIMS</u>

To prevail on a claim for cyberpiracy under 15 U.S.C. § 1125(d)(1)(A), a plaintiff must show "(1) the defendant registered, trafficked in, or used a domain name; (2) the domain name is identical or confusingly similar to a protected mark owned by the plaintiff; and (3) the defendant acted with 'bad faith intent to profit from that mark.'" *Entrepreneur Media, Inc. v. D. Nicole Enterprises, LLC*, 2014 WL 12589325, at *5 (C.D. Cal. Feb. 20, 2014), *aff'd,* 677 Fed. Appx. 312 (9th Cir. 2017). Here, from 2012 to 2018 Defendants used the website CoCoonShapers.com to sell *Co'Coon* products directly to consumers at retail prices; then, in 2019, Defendant New Concepts (through Santiago or Segarra) began re-directing consumers intending to visit CoCoonShapers.Com to the Curveez.com website, where consumers can only purchase *Curveez* products. CoCoonShapers.com is a domain identical or confusingly similar to the protected *Co'Coon* Word Mark. Defendants intentionally redirecting consumers away from CoCoonShapers.Com to Curveez.com—where Defendants sold *only* their competing *Curveez* products—exhibits a bad faith intent to profit from the *Co'Coon* Word Mark.

Similarly, when Defendants were distributing *Co'Coon* products, they distributed *Co'Coon* products to Shapermint.com, where *Co'Coon* products were displayed on a landing page with a Google link titled "Co'Coon Shapewear | Shapermint," and a web-address https://shapermint.com/collections/co-coon. Originally, Consumers clicking this link were taken to a landing page containing *Co'Coon* products being sold through the Shapermint.com. However, as of the filing of this Motion, clicking this link takes consumers to a "*Curveez*" landing page on Shapermint.com, with the web address https://shapermint.com/collections/curveez. Defendant New Concepts (through Santiago or Segarra) instructed or caused Shapermint to re-direct consumers looking for *Co'Coon* products to Shapermint's landing page for *Curveez* products.

Both instances constitute cyberpiracy because Defendants trafficked in or used domain names that are identical or confusingly similar to the *Co'Coon* name, and they acted with a bad faith intent to profit from the *Co'Coon* mark in violation 15 U.S.C. § 1125(d)(1)(A).

### C. LIKELIHOOD OF SUCCESS ON THE MISAPPROPRIATION OF TRADE SECRETS CLAIMS

To prevail on a claim of misappropriation of trade secrets, the Plaintiff must show "(1) the plaintiff possessed secret information and took reasonable steps to protect its secrecy and (2) the secret was misappropriated, either by one who knew or had reason to know that the secret was improperly obtained or by one who used improper means to obtain it." *XTec, Inc. v. Hembree Consulting Services, Inc.*, 183 F. Supp. 3d 1245, 1253 (S.D. Fla. 2016); *see also Coihue, LLC v. PayAnyBiz, LLC*, 2018 WL 7376908, at *4 (S.D. Fla. Feb. 6, 2018) ("Both the DTSA and the FUTSA require an 'act of misappropriation,' and under both statutes 'the plaintiff bears the burden of demonstrating both that the specific information it seeks to protect is secret and that it has taken reasonable steps to protect this secrecy.'").

Ruiz, as a former operations manager of Fibertex, had intimate knowledge of Fibertex's Trade Secrets. *See Summitbridge Nat. Investments LLC v. 1221 Palm Harbor, L.L.C.*, 67 So. 3d 448, 450 (Fla. 2d DCA 2011) (describing a trade secret information that "relates to the production of goods, as, for example, a machine or formula for the production of an article."). Defendant New Concepts (through Santiago and Segarra) knew Ruiz had knowledge of Fibertex's Trade Secrets and it hired Ruiz for the express purpose of using those Trade Secrets for Defendants' benefit. Defendants used Fibertex's Trade Secrets to create shapewear products that are exact replicas of *Co'Coon* products. [DE 1-20].

### II. FIBERTEX WILL BE IRREPARABLY HARMED IF DEFENDANTS ARE NOT ENJOINED

Trademark infringement and unfair competition, by their very nature, cause irreparable harm because, absent injunctive relief, the defendant could continue to sell offending products and confuse consumers. *See Pepsico, Inc. v. Distribuidora La Matagalpa, Inc.,* 510 F. Supp. 2d 1110, 1116 (S.D. Fla. 2007); *accord*. *Levi Strauss & Co.,* 51 F.3d at 986 (holding that plaintiff would be irreparably harmed by the continued sale of counterfeit jeans because that would damage plaintiff's business reputation and decrease its legitimate sales). In infringement and unfair competition cases, a strong showing of a likelihood of confusion may, by itself, constitute a showing of a substantial threat of irreparable harm because consumer confusion and reputational damage cannot be adequately remedied at law. *Boulan S. Beach Master Ass'n, Inc. v. Think Properties, LLC*, 617 Fed. Appx. 931, 934 (11th Cir. 2015).

Here, Defendants' conduct not only presents a *likelihood* of confusion, it has already caused *actual* confusion in the marketplace. At least one significant shapewear retailer—Shapermint.com—believes that New Concepts' *Curveez* products are one and the same with *Co'Coon* products, as it represented through its Instagram account that "*Curveez* is the new name of *Co'Coon*." [DE 1-21]. Moreover, Defendants are continuing to create a substantial likelihood of confusion by using consumer reviews of *Co'Coon* products to sell New Concepts' *Curveez* products, which causes unsuspecting on-line consumers to believe that *Co'Coon* and *Curzeez* products are one and the same.

Similarly, Defendants selling and promoting *Co'Coon* products under the *Curveez* name, or removing the *Co'Coon* tags from *Co'Coon* products then re-tagging and re-packaging them using the *Curveez* name, also create a substantial likelihood of confusion because consumers are put in a position where they cannot distinguish the difference between *Co'Coon* and *Curveez*. Defendants' conduct damages Fibertex's reputation and harms its goodwill, which the Eleventh Circuit has continually held constitutes irreparable harm.

### III. FIBERTEX'S THREATENED HARM OUTWEIGHS THE HARM TO DEFENDANTS IF THE TEMPORARY INJUNCTION IS ENTERED

Fibertex has spent time, energy, and money in creating the *Co'Coon* brand's goodwill and reputation. Should the Court deny this Motion, Fibertex will continue to suffer serious injury to that goodwill and reputation. As explained above, that harm is immensurable and cannot be repaired. Conversely, an injunction has no effect on Defendants' *lawful* activities—that is, New Concepts can continue to sell its abdominal waistband products under its *Curveez* brand, or it can lawfully manufacture shapewear products without using plaintiff's trade secrets and it can sell those products without using the *Co'Coon* name. The injunction would only effect Defendants unlawful activities, which cannot form part of the calculus when weighing the balance of harms between Plaintiff and Defendants.

### IV. ENJOINING DEFENDANTS SERVES THE PUBLIC INTEREST

One of the fundamental purposes of the Lanham Act is preventing consumer confusion. *Davidoff & CIE, S.A. v. PLD Intern. Corp.*, 263 F.3d 1297, 1304 (11th Cir. 2001).

> [L]awmakers recognized that every product is composed of a bundle of special characteristics. Consumers who purchase a particular product expect to receive the same special characteristics every time. The Lanham Act protects these expectations by excluding others from using a particular mark and

>  making consumers confident that they can purchase brands without being confused or misled. Thus trademark law ensures consistency for the benefit of consumers.

*Id.,* at 1301. Here, enjoining Defendants would best serve the public interest because it would reduce the confusion and deception caused by Defendants' conduct. *See Davidoff & CIE, S.A.*, 263 F.3d at 1304 ("the public interest is served by preventing consumer confusion in the marketplace"); *see also Angel Flight of Georgia, Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1209 (11th Cir. 2008) ("As this Court has stated previously, in ordinary trademark infringement actions ... complete injunctions against the infringing party are the order of the day. The reason is simple: the public deserves not to be led astray by the use of inevitably confusing marks—even in cases in which more than one entity has a legal right to use the mark.") (internal citations and quotations omitted); *TracFone Wireless, Inc. v. Clear Choice Connections, Inc.*, 102 F. Supp. 3d 1321, 1334 (S.D. Fla. 2015) ("An injunction preventing Clear Choice from using the [confusingly similar] domain names clearly serves the public interest in avoiding unnecessary confusion.")

**WHEREFORE**, FIBERTEX requests this Court grant this Motion, and enter an order enjoining New Concepts, its employees, agents, successors and assigns, and all those in active concert and participation with Defendants, which includes but is not limited to Janice Santiago, Rafael Segarra, and Mario Ruiz, from:

(1) removing the *Co'Coon* Marks from *Co'Coon* Products, then re-tagging and re-packaging them using the *Curveez* Mark;

(2) selling, offering for sale, advertising, promoting, or displaying any *Co'Coon* product that has been re-tagged and re-packaged under the *Curveez* Mark;

(3) selling, offering for sale, advertising, promoting, or displaying Fibertex's *Co'Coon* products under the *Curveez* name;

(4) selling, offering for sale, advertising, promoting, or displaying Fibertex's *Co'Coon* products without identifying them as being *Co'Coon* products;

(5) using the product description "[p]reviously known as: *Co'Coon* . . ." to sell, offer for sale, advertise, promote, or display *Curveez* products, or using other false and misleading product descriptions to sell, offer for sale, advertise, promote, or display *Curveez* products;

(6) using on-line consumers' reviews of *Co'Coon* products to sell, offer for sale, advertise, promote, or display *Curveez* products;

(7) redirecting on-line consumers searching for *Co'Coon* shapewear products to internet pages promoting *Curveez* products;

(8) imitating, copying, or making unauthorized use of any of the *Co'Coon* Marks or tradename, counterfeits thereof, or any confusingly similar variations thereof;

(9) importing, manufacturing, producing, distributing, circulating, selling, offering for sale, advertising, promoting, or displaying any product using any simulation, reproduction, counterfeit, copy, or any confusingly similar variation of any of the *Co'Coon* Marks or tradename;

(10) using any false designation of origin or false description, or performing any act which can or is likely to lead members of the trade or public to believe that New Concepts and/or any product manufactured, distributed or sold by New Concepts is in any manner associated or connected with the *Co'Coon* Marks or tradename or is sold, manufactured, licensed, sponsored, approved or authorized by Fibertex;

(11) using Fibertex's Trade Secrets to manufacture products that are virtually identical to *Co'Coon* products; and / or

(12) assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (1) through (11) above.

Fibertex further requests that this Court direct Defendants to file with the Court and serve upon FIBERTEX's counsel within thirty (30) days after entry of such judgment, a report in writing under oath, setting forth in detail the manner and form in which Defendants have complied with the above. Finally, Fibertex requests attorneys' fees in its favor and any other relief this Court deems just and proper.

Respectfully Submitted:

BELL ROSQUETE REYES ESTEBAN, PLLC
Attorneys for Plaintiff
999 Ponce De Leon Blvd., Suite 1120 PH
Miami, Florida 33134
Telephone: (305) 570-1610
Facsimile: (305) 570-1599
aesteban@brresq.com
jreyes@brresq.com
arosquete@brresq.com

By: /s/ *Alexander Esteban*
Alexander Esteban, Esq.
Florida Bar No. 107491

Javier A. Reyes, Esq.<br>
Florida Bar No. 688487<br>
Armando Rosquete, Esq.<br>
Florida Bar No. 648434

### REQUEST FOR HEARING

Pursuant to Fed. R. Civ. P. 65(a), Fibertex respectfully requests that this Honorable Court hold a hearing on the instant Motion. *See Autonation, Inc. v. Wilson*, 2016 WL 8677193, at *2 (S.D. Fla. Dec. 30, 2016) (*citing Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda County*, 415 U.S. 423, 432 n.7 (1974) ("The notice required by Rule 65(a) before a preliminary injunction can issue implies a hearing in which the defendant is given a fair opportunity to oppose the application and to prepare for such opposition."). Fibertex would be prepared to proceed with an evidentiary hearing at an appropriate time should the Court deem it necessary.

By: /s/ <u>Alexander Esteban</u><br>
Alexander Esteban, Esq.<br>
Florida Bar No. 107491

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 24<u>th</u> day of April 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via Notice of Electronic Filing generated by CM/ECF.

By: /s/ <u>Alexander Esteban</u><br>
Alexander Esteban, Esq.<br>
Florida Bar No. 107491