# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 20-CV-20720-SCOLA/TORRES

FIBERTEX CORPORATION,

      Plaintiff,

v.

NEW CONCEPTS DISTRIBUTORS INT'L, LLC, *et al*,

      Defendants.

_____/

## REPORT AND RECOMMENDATION ON MOTION FOR
## PRELIMINARY INJUNCTION

    This matter is before the Court on Fibertex Corporation's ("Plaintiff" or "Fibertex") motion for preliminary injunction against New Concepts Distributors Int'l, LLC ("New Concepts"), Janice Santiago ("Santiago"), and Rafael Segarra ("Segarra") (collectively, the "Defendants").[1]  [D.E. 23].  New Concepts responded to Plaintiff's motion on May 15, 2020 [D.E. 27] to which Plaintiff replied to on June 1, 2020 [D.E. 37].  An evidentiary hearing was held over two days, September 2, 2020 and September 16, 2020, during which both sides presented testimony and exhibits.  Therefore, Plaintiff's motion is now ripe for disposition.[2]  After careful consideration of the motion, response, reply, the testimony of witnesses, and the evidence in the

---

[1]    On July 22, 2020, Fibertex dismissed, without prejudice, all claims against Defendant Mario Ruiz.  [D.E. 64].

[2]    The Honorable Robert N. Scola, Jr. referred the motion to the undersigned Magistrate Judge on June 16, 2020.  [D.E. 43].

record, we **RECOMMEND** that the motion be **GRANTED in part** and **DENIED in part**.

## I.     BACKGROUND AND FACTUAL FINDINGS

This matter concerns former business partners involved in the compression shapewear clothing industry.  Compression shapewear garments are worn by women and men to provide slimming, tightening, and body sculpting effects.  Fibertex, a Columbian company, manufactures and sells compression shapewear garments under the "Co'Coon" word trademark and composite trademark.[3]  The Co'Coon word mark was first used in commerce in 2000 and the composite mark in 2016.  New Concepts, a Florida company, is a multi-brand distributor and was authorized by Fibertex to sell Co'Coon products in the United States from 2006 until 2019.  New Concepts also manufactures and sells compression shapewear garments under its own trademark and tradename, "Curveez."  Curveez was developed in 2010 with the knowledge and consent of Fibertex so that the parties could sell more product under different brands to competing customers.  Ninety-five percent of the worldwide seamless compression shapewear garments, including Co'Coon and Curveez, are manufactured using Santoni Seamless Machines.  Because shapewear garments are mostly indistinguishable and made using the same machines, a compression shapewear company's brand is extremely valuable.

---

[3]     The Co'Coon word mark is identified by serial number/registration number 77-868,952/3,949,789, the Co'Coon composite mark is identified by serial number/registration number 88-520,002/pending.  [D.E. 23, p. 2].

Under the parties' unwritten manufacturer-distributor relationship, New Concepts ordered Co'Coon products from Fibertex, and it would have 90 days to pay the invoice. With consent, New Concepts used the Co'Coon marks to promote Co'Coon products and re-sold them at a markup. This included New Concepts selling the Co'Coon products to third-party e-commerce websites who would then ultimately sell the products online to consumers. Each third-party website would receive from New Concepts a price list and a catalog with the images of the Co'Coon products. The websites would then populate the Co'Coon product information to their websites. The third-party websites that sold Co'Coon products distributed by New Concepts included: Feelfoxy.com, Shapermint.com, Classicshapewear.com, Shapewearusa.com, Mytotaldesire.com, Bonanza.com, and Thefamouscurves.com. New Concepts also sold Co'Coon products directly to consumers through the websites CoCoonshapers.com and Amazon.com and promoted the products through social media accounts such as Instagram.

In addition, New Concepts sold Co'Coon products in a less traditional way. New Concepts would remove the product tags from a Co'Coon product, replace them with a different brand's tags, which brand depended on the market, and then sold the Co'Coon product under the different brand name. New Concepts first started this retagging back in 2010 with Fibertex's knowledge. The ownership group of Fibertex, however, changed sometime in approximately 2015 or 2016. At this time, Fibertex's new owners assured New Concepts that their business relationship would not change. But the parties never memorialized, and apparently never discussed, that New

Concepts was authorized to retag Co'Coon products after the ownership change. Business was good after the ownership change. In 2016 and 2017, New Concepts purchased approximately 40,000 units of Co'Coon products per year, and in 2018 and 2019, New Concepts purchased approximately 200,000 units of Co'Coon products per year.

Starting in 2019, however, the relationship began to erode. For instance, on July 5, 2019, Fibertex discovered that back in January 2019 New Concepts filed with the United States Patent and Trademark Office ("USPTO") a Declaration of Incontestability of the Co'Coon word mark. This filing incorrectly identified New Concepts as the new "proposed owner," that was to replace Fibertex as the owner of the Co'Coon word mark. Once Fibertex confronted New Concepts with this false filing, New Concepts claimed it was a mistake. New Concepts claims the relationship fractured once Fibertex sold it non-conforming product, so it stopped paying invoices totally around $800,000. Because of this, around the summer of 2019, New Concepts decided to stop purchasing Co'Coon products all together without initially telling Fibertex. New Concepts, however, still possessed the $800,000 worth of product.

New Concepts did tell at least one third-party website, Shapermint.com, that it was no longer going to distribute Co'Coon products, and instead, was going to distribute Curveez shapewear products to the website. Shapermint.com thus returned its Co'Coon inventory to New Concepts, and New Concepts sent Shapermint.com the Curveez products to replace the Co'Coon products. Then in

November 2019, New Concepts formally told Fibertex that it would not pay the outstanding invoices.

Concerned about the failing relationship, Fibertex started to review the websites and social media accounts that sold and promoted Co'Coon products. This review uncovered several issues that appeared to show New Concepts was intentionally infringing on the Co'Coon trademarks. Fibertex found these issues both on websites that New Concepts directly controlled and on the third-party websites. For example, New Concepts was re-directing consumers intending to visit CoCoonshapers.com to Curveez.com, where consumers could only purchase Curveez products. Fibertex also found that the Amazon.com webpage New Concepts controlled for Co'Coon products had an incorrect product description that connected it to Curveez products. Fibertex also found that New Concepts was promoting and selling Co'Coon products under the Curveez name on an Instagram page that New Concepts controlled, @curveezwomen, and on Curveez.com.

For third-party websites, Fibertex discovered that the webpage Shapermint.com/collections/*co-coon* redirected consumers to Shapermint.com/collections/*curveez*, where consumers can only purchase Curveez products. Once on the Curveez Shapermint.com page, Fibertex noticed that customer reviews of Co'Coon products were being used to promote the Curveez products. And the product description for several Curveez products stated that the product was "[p]reviously known as: Co'Coon." Shapermint's Instagram account also posted that Curveez is the new Co'Coon. Fibertex found similar issues on other sites as well.

5

Such as Feelfoxy.com, which sold Co'Coon products but did not identify them with the Co'Coon marks or any brand name.

Concerned, Fibertex notified New Concepts that the Co'Coon marks and products were being misused on several websites. New Concepts did not deny it engaged in the conduct under its control and eventually stopped those issues. It denies knowing that the third-party sites were engaging in the behavior before Fibertex notified it and claims it did not have the personnel to track such issues. However, once it knew of the issues, it only contacted some of the websites to stop the infringing conduct. Indeed, a representative of Feelfoxy.com testified that had New Concepts requested Co'Coon marks to be used when selling Co'Coon products, it would have complied, but New Concepts never made such request. And as of the date of this Report and Recommendation, Shapermint.com continues to incorrectly redirect consumers going to Shapermint.com/collections/co-coon to the Curveez product page on Shapermint.com. Santiago, the president and management member of New Concepts, testified that she had a few reasons why she did not contact some of the websites. These excuses ranged from assuming the website would not comply to not wanting to lose the business relationship.

Fibertex revealed another issue in November 2019. New Concepts was still retagging Co'Coon products with Curveez tags before reselling them. In response to a consumer inquiry, a Fibertex employee, Ms. Alejandra Angel, recognized Co'Coon products that were being sold under the Curveez name on Shapermint.com. Ms. Angel ordered the Curveez-branded products and took side-by-side photographs of

them, Curveez products received from Curveez.com, and of Co'Coon-branded Co'Coon products to compare.  The photographs, which were presented as evidence at the evidentiary hearing, support Ms. Angel's testimony that the products received from Shapermint.com were in fact Co'Coon products that had been re-labeled and re-packaged as Curveez.  This is evident by pulled threads in the exact spot of the product where Fibertex customarily places Co'Coon tags, the type of straps on the products, and distinct markings that Fibertex places on its products during the knitting process to differentiate product sizes.  New Concepts denied that the exact products Ms. Angel ordered were Co'Coon products but did not dispute that it was common for it to retag Co'Coon products because it was given permission to do so back in 2010, which permission it claims was never revoked until the day this action was filed.

Fibertex therefore filed a complaint against Defendants alleging (1) trademark counterfeiting and infringement; (2) false designation of origin, unfair competition; (3) cyberpiracy; (4) Florida's Deceptive and Unfair Trade Practices Act; (5) breach of contract; and (6) Florida's common law unfair competition.  [D.E. 1].  Fibertex also brought trade secret claims, but voluntarily dismissed them.  [D.E. 64].  Because New Concepts still has between $400,000 to $800,000 worth of Co'Coon product on hand, wants to prevent New Concepts from engaging in future trademark infringement, and wants to stop the third-party websites from infringing on its trademarks, Fibertex moved for preliminary injunction.  Specifically, Fibertex seeks to enjoin

Defendants, and anyone acting in concert and participation with them, to stop twelve different activities related to Defendants alleged illicit conduct.

In its defense, New Concepts argues that it has not infringed on the Co'Coon trademarks because it had consent from Fibertex and the motion for preliminary motion is moot because New Concepts is currently not doing any of the twelve activities. Precisely, CoCoonshapers.com was taken down after the lawsuit was filed, it no longer sells Co'Coon products on Amazon.com, and it no longer retags Co'Coon products. And that Fibertex's concerns are mostly with the third-party websites that New Concepts cannot control. New Concepts also filed a counterclaim against Fibertex asserting (1) breach of contract; and (2) unjust enrichment. [D.E. 56].

## II.    STANDARD OF REVIEW

A moving party must demonstrate the following elements to obtain a preliminary injunction: (1) substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) the threatened injury to the movant outweighs the potential harm to the defendant; and (4) that injunction will not disserve the public interest. *Palmer v. Braun*, 287 F.3d 1325, 1329 (11th Cir. 2002); *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1265 (11th Cir. 2001). "At the preliminary injunction stage, the Court may rely on 'affidavits and hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is appropriate given the character and objectives of the injunctive proceeding.'" *Re-Gu Records v. Marakka 2000, Inc.*, 2009 WL 10668181, at *2 (S.D. Fla. Aug. 19, 2009), *report and recommendation adopted*, 2009 WL 10669020 (S.D. Fla. Nov. 10,

2009) (quoting *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 986 (11th Cir. 1995)).  A preliminary injunction is "an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the 'burden of persuasion' as to the four prerequisites." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1988); *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) ("Because a preliminary injunction is an extraordinary and drastic remedy, its grant is the exception rather than the rule.") (internal quotation omitted).

The goal of a preliminary injunction is to prevent irreparable harm and to "preserve the district court's power to render a meaningful decision after a trial on the merits." *Canal Auth. of the State of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974).  Of the four prerequisite elements a moving party must show before entry of a preliminary injunction, "the first factor, establishing a substantial likelihood of success on the merits, is most important." *ABC Charters, Inc. v. Bronson*, 591 F. Supp. 2d 1272, 1294 (S.D. Fla. 2008).  "If the movant is unable to establish a likelihood of success on the merits, a court need not consider the remaining conditions prerequisite to injunctive relief." *Johnson & Johnson Vision Care, Inc. v. 1-800-Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002) (citing *Pittman v. Cole*, 267 F.3d 1269, 1292 (11th Cir. 2001)).  "Significantly, even if Plaintiffs establish a likelihood of success on the merits, the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper." *Siegel*, 234 F.3d at 1176.  Regardless, in trademark infringement actions, where a plaintiff has shown

9

a substantial likelihood of success, irreparable harm is generally presumed.  *See Levi Strauss & Co.*, 51 F.3d at 986.

### III.    ANALYSIS

#### A.    Substantial Likelihood of Success on the Merits

Beginning with the first prerequisite for the issuance of a preliminary injunction, the Court must consider whether Plaintiff has proven a substantial likelihood of success on the merits.  To establish a substantial likelihood of success on the merits, Plaintiff must demonstrate a likelihood of success at trial as to both its prima facie case and the affirmative defenses asserted by the non-moving party.  *See TracFone Wireless, Inc. v. Clear Choice Connections, Inc.*, 102 F. Supp. 3d 1321, 1325 (S.D. Fla. 2015).  If Plaintiff fails to demonstrate a "substantial likelihood of success on the merits" this alone defeats a motion for a preliminary injunction, regardless of the ability to establish any of the other elements. *See, e.g., McDaniel v. Crosby*, 194 F. App'x 610, 613 (11th Cir. 2006).  We thus first determine if Fibertex is likely to succeed on the merits of its claims.  Fibertex's claims fall under three categories: (i) trademark infringement, (ii) unfair competition, and (iii) cyberpiracy under 15 U.S.C. § 1125(d)(1)(A).

#### i.    Likelihood of Success on Trademark Infringement

Fibertex claims that New Concepts infringed on its Co'Coon word mark, a registered trademark, and its Co'Coon composite mark, an unregistered trademark.

"Trademarks are 'any word, name, symbol, or device, or any combination thereof [used] to identify and distinguish [one's] goods . . . from those manufactured

or sold by others and to indicate the source of the goods.'" *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1216 (11th Cir. 2000) (quoting 15 U.S.C. § 1127) (alterations in original). "Under the Lanham Act, 15 U.S.C. § 1114(1), a defendant is liable for infringement, if, without consent, he uses 'in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark' which 'is likely to cause confusion, or to cause mistake, or to deceive.'" *Frehling Enters. v. Int'l Select Group, Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999). To prevail on a federal trademark infringement claim, a plaintiff must demonstrate "(1) its mark was used in commerce by the defendant without the [plaintiff's] consent and (2) the unauthorized use was likely to cause confusion, or to cause mistake or to deceive." *Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir. 2007) (quoting *Burger King Corp. v. Mason*, 710 F.2d 1480, 1491 (11th Cir. 1983)); *see also* 15 U.S.C. § 1114(1)(a).

For unregistered trademarks, section 43(a) of the Lanham Act applies. "To prevail under this section, a claimant must show (1) that it had prior rights to the mark at issue and (2) that the defendant had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001).

Here, Fibertex has owned the Co'Coon word trademark since 2011. Fibertex also has prior-use rights to the Co'Coon composite trademark, which it started using in interstate commerce in 2016. Because New Concepts used both marks to sell its

Curveez branded shapewear garments on websites, including CoCoonshapers.com, Fibertex has established the first factor for both registered and unregistered trademarks.  For the second factor, courts consider the following seven factors in assessing whether or not a likelihood of consumer confusion exists: (1) type of a plaintiff's mark; (2) similarity of the parties' marks; (3) similarity of the products or services the marks identify; (4) similarity of the parties' retail outlets (trade channels) and customers; (5) similarity of advertising media used; (6) existence of actual confusion; and (7) a defendant's intent. *See Mango's Tropical Cafe, Inc. v. Mango Martini Rest. & Lounge, Inc.*, 844 F. Supp. 2d 1246, 1252 (S.D. Fla. 2011) (citing *Frehling,* 192 F.3d at 1335); *see also Univ. of Georgia Athletic Ass'n v. Laite*, 756 F.2d 1535, 1542 (11th Cir. 1985) (finding that a court does not need to specifically mention each of the seven factors in its analysis).  The strength of mark and evidence of actual confusion are the most important factors.  *See Frehling,* 192 F.3d at 1335.

In this case, there is consumer confusion.  New Concepts used the Co'Coon marks to sell Curveez products on websites that consumers would expect to purchase Co'Coon products, such as CoCoonshapers.com and Shapermint.com/collections/co-coon.  Consumer reviews for Co'Coon products were used to promote Curveez products, which could cause consumers to think that Co'Coon and Curveez products were the same.  Moreover, New Concepts intended and achieved actual confusion. This is evident by Shapermint.com updating its website to state that Curveez is the new name of Co'Coon around the same time New Concepts told Shapermint.com that it was not longer supplying it with Co'Coon products but with Curveez products and

in the same year New Concepts improperly filed the Declaration of Incontestability of the Co'Coon word mark with the USPTO.

In response, New Concepts first argues that it had consent to use the Co'Coon marks, and second, an injunction is moot regarding its own behavior because it took down the website CoCoonshapers.com and no longer sells Co'Coon products on Amazon.  New Concepts does not dispute that in 2019 it stopped selling Co'Coon products on the CoCoonshapers.com website, and instead, re-directed consumers to Curveez.com to sell Curveez products.  While Fibertex provided consent to use CoCoonshapers.com to sell Co'Coon products, it never provided consent to New Concepts to use the Co'Coon marks to sell Curveez products.  Therefore, New Concepts exceeded the scope of Fibertex's consent and infringed on the Co'Coon marks.

Now, is a preliminary injunction moot because CoCoonshapers.com was taken down?  No. Nothing is stopping New Concepts from engaging in the same infringing conduct in the future. *See Burger King Corp. v. Weaver*, 33 F. Supp. 2d 1037, 1040 (S.D. Fla. 1998) (issuing a preliminary injunction despite a defendant's voluntary cessation on plaintiff's marks and defendant's pledge to not use the marks in the future); *Clayton v. Howard Johnson Franchise Sys. Inc.*, 730 F. Supp. 1553, 1558 (M.D. Fla.1988) ("[T]he mere discontinuance of infringing conduct does not render injunctive relief inappropriate").  A preliminary injunction also causes New Concepts no harm as it will simply maintain the status quo with no further action needed from New Concepts.

Regarding the infringing conduct that happened and is still happening on the third-party websites, New Concepts acknowledges the improper conduct but argues it cannot control the actions of third parties.  We disagree.  The Supreme Court stated in a trademark infringement action involving a preliminary injunction that "[e]ven if a manufacturer does not directly control others in the chain of distribution, it can be held responsible for their infringing activities . . . if a manufacturer or distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement." *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 853-54 (1982); *see also Bauer Lamp Co., Inc. v. Shaffer,* 941 F.2d 1165, 1171 (11th Cir.1991) ("A person who knowingly participates in furthering the [ ] infringement is liable as a contributing party.").

At the least, New Concepts is a contributory party.  It knows that Shapermint.com is infringing on the Co'Coon marks but continues to supply it with products to sell.  *See TracFone Wireless, Inc. v. SND Cellular, Inc.*, 715 F. Supp. 2d 1246, 1255 (S.D. Fla. 2010) (issuing a permanent injunction in a trademark infringement case and stating that "[c]ontributory infringement extends to 'all those who knowingly play a significant role in accompanying the unlawful purpose.'") (citation omitted).  Shapermint.com's infringing actions include using Co'Coon consumer reviews to promote Curveez products, redirecting consumers from Shapermint.com/collections/co-coon to the Curveez landing page, and stating in the product description of Curveez products that Curveez is the new name of Co'Coon.

14

To the point, if New Concepts stopped providing Shapermint.com with Curveez products, it would no longer be contributing to Shapermint.com's infringement of the Co'Coon marks.  New Concepts' argument that it cannot control third-party websites thus falls flat.  Furthermore, there is evidence that shows New Concepts has intentionally induced Shapermint.com to infringe on the Co'Coon marks, which is also enough to establish that New Concepts has engaged in contributory trademark infringement.[4]   Fibertex has therefore demonstrated a likelihood of success on its trademark infringement claims and its motion for preliminary injunction is not moot.

### ii.   *Likelihood of Success on Unfair Competition Claims*

Section 43(a) of the Lanham Act prohibits misrepresentations as to the source of a product, which is referred to as "'passing off' and "'reverse passing off."  Passing off occurs when "the defendant sells its products under the plaintiff's name."  *Del Monte Fresh Produce Co. v. Dole Food Co., Inc.*, 136 F. Supp. 2d 1271, 1284 (S.D. Fla. 2001).  Reverse passing off occurs when a "defendant sells the plaintiff's product under the defendant's name."  *Id.*  "The typical reverse [passing] off case involves a situation where the defendant acquires a product manufactured by the plaintiff, removes the plaintiff's mark, affixes the defendant's mark, and sells it as the defendant's product."  *Id.*

Here, New Concepts engaged in both passing off and reverse passing off.  For passing off, New Concepts sold its products using the Co'Coon marks on various

---

[4]   New Concepts parrots the mootness and lack of third-party control arguments throughout its response.  We reject these repeated arguments for the same reasons discussed in this section.

websites.  For reverse passing off, New Concepts removed Co'Coon tags from Co'Coon products, re-tagged and re-packaged them using the Curveez name, and then sold the Curveez-branded products through at least Shapermint.com.  Accordingly, Fibertex has demonstrated a likelihood of success on its unfair competition claims.

### iii.   *Likelihood of Success on Cyberpiracy Claims*

Under 15 U.S.C. § 1125(d)(1)(A), also known as a cyberpiracy claim,

[a] person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person—

(i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and

(ii) registers, traffics in, or uses a domain name that—

(I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark . . .

*Saffer Grp., Inc. v. www.Saffer.com*, 2012 WL 12915412, at *2 (S.D. Fla. July 18, 2012).

New Concepts did have permission to use the website CoCoonshapers.com to sell Co'Coon products directly to consumers at retail prices.  In 2019, however, New Concepts redirected consumers intending to visit CocCoonshapers.com to the Curveez.com website, where consumers could only purchase Curveez products.  New Concepts does not deny this.  Because CoCoonshapers.com is a domain confusingly similar to the protected Co'Coon word mark and New Concepts intentionally redirected consumers to Curveez.com to profit off the sale of Curveez products, Fibertex has demonstrated a likelihood of success on its cyberpiracy claims.

**B.**     *Irreparable Injury*

Having shown a likelihood of success on its claims, Fibertex must next show a substantial threat of irreparable injury.  Suitably, the showing of a substantial likelihood of success on its trademark infringement claims is enough here to establish irreparable injury.  *See Levi Strauss & Co.*, 51 F.3d at 986.  This is because, absent injunctive relief, New Concepts could continue to sell offending products to the third-party websites.  *See id.* (holding that plaintiff would be irreparably harmed by the continued sale of counterfeit jeans because that would damage plaintiff's business reputation and decrease its legitimate sales); *see also Pepsico, Inc. v. Distribuidora La Matagalpa, Inc.*, 510 F. Supp. 2d 1110, 1116 (S.D. Fla. 2007) (noting that trademark infringement results in irreparable injury because of the attendant loss of goodwill, reputation, and business) (citation omitted).  This is especially true because there is consumer confusion in this case.  *See Boulan S. Beach Master Ass'n, Inc. v. Think Properties, LLC*, 617 F. App'x. 931, 934 (11th Cir. 2015) (finding that the district court abused its discretion in denying preliminary injunction when the plaintiff established consumer confusion and thus irreparable injury).

New Concepts asserts that it is not currently infringing, so there is no harm that cannot be remedied by money damages.  This is not true.  Third party websites are still infringing and causing consumer confusion, which harms Fibertex's business reputation, goodwill, and brand. And in the compression shapewear industry, where a company's brand is extremely valuable, this is exceptionally harmful to Fibertex. The issuance of an injunction that requires New Concepts not to assist, aid, or abet

infringing websites like Shapermint.com can prevent the irreparable harm because New Concepts can no longer supply them with its shapewear products.

### C.    *Balance of Hardships*

The threatened injury to Fibertex outweighs the potential harm to New Concepts. On one hand, denying the motion for preliminary injunction will cause Fibertex continued serious harm to its goodwill, reputation, and Co'Coon brand.  On the other hand, an injunction should have no effect on New Concepts' lawful activities.  New Concepts can continue to sell its Curveez-branded products except to third-parties that it knows are infringing on the Co'Coon trademarks.  Thus, an injunction would only effect New Concepts' potential unlawful activities.

### D.    *Public Interest*

Enjoining New Concepts would not disserve the public interest.  Instead, it would help eliminate and prevent consumer confusion. *See Davidoff & CIE, S.A. v. PLD Intern. Corp.*, 263 F.3d 1297, 1304 (11th Cir. 2001) ("the public interest is served by preventing consumer confusion in the marketplace").

Because all factors favor the issuance of a preliminary injunction and the motion is not moot, we recommend that Plaintiff's motion be **GRANTED in part** and **DENIED in part**.  All relief related to Plaintiff's trade secrets claims are **DENIED** because Plaintiff voluntarily withdrew those claims.  Further, Fibertex's request for attorneys' fees is **DENIED** with leave to renew once a final judgment is entered.  All other relief requested in Plaintiff's motion is **GRANTED**.  Finally, New Concepts request for Fibertex to give security in connection with the injunction is **DENIED**

because New Concepts has not provided evidence how the injunction will restrict and harm its lawful business activities.

### IV.   CONCLUSION

Based on the foregoing reasons, the Court recommends that Plaintiff's motion for preliminary injunction [D.E. 23] be **GRANTED in part** and **DENIED in part**. The Court recommends that New Concepts, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with New Concepts, including Santiago and Segarra, having notice of the Court's Order are hereby restrained and enjoined until further Order of this Court as follows:

1. removing the Co'Coon marks from Co'Coon products, then re-tagging and re-packaging them using the Curveez mark;

2. selling, offering for sale, advertising, promoting, or displaying any Co'Coon product that has been re-tagged and re-packaged under the Curveez mark;

3. selling, offering for sale, advertising, promoting, or displaying Fibertex's Co'Coon products under the Curveez name;

4. selling, offering for sale, advertising, promoting, or displaying Fibertex's Co'Coon products without identifying them as being Co'Coon products;

5. using the product description "[p]reviously known as: Co'Coon . . ." to sell, offer for sale, advertise, promote, or display Curveez products, or using other false and misleading product descriptions

to sell, offer for sale, advertise, promote, or display Curveez products;

6. using on-line consumers' reviews of Co'Coon products to sell, offer for sale, advertise, promote, or display Curveez products;

7. redirecting on-line consumers searching for Co'Coon shapewear products to internet pages promoting Curveez products;

8. imitating, copying, or making unauthorized use of any of the Co'Coon marks or tradename, counterfeits thereof, or any confusingly similar variations thereof;

9. importing, manufacturing, producing, distributing, circulating, selling, offering for sale, advertising, promoting, or displaying any product using any simulation, reproduction, counterfeit, copy, or any confusingly similar variation of any of the Co'Coon marks or tradename;

10. using any false designation of origin or false description, or performing any act which can or is likely to lead members of the trade or public to believe that New Concepts and/or any product manufactured, distributed or sold by New Concepts is in any manner associated or connected with the Co'Coon marks or tradename or is sold, manufactured, licensed, sponsored, approved or authorized by Fibertex; and

11. assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (1) through (10) above.

We further recommend that New Concepts shall file with the Court and serve upon Fibertex's counsel within thirty days after entry of a preliminary injunction, a report in writing under oath, setting forth in detail the manner and form in which Defendants have complied with the above.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge.  Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report.  28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Comm'r of Soc. Sec.,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 19th day of October, 2020.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge