United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Fibertex Corporation, Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| New Concepts Distributors Int'l, LLC, Janice Santiago, and Rafael G. Segarra, Defendants. | ) ) ) |
| | ) |
| | ) Civil Action No. 20-20720-Civ-Scola |
| New Concepts Distributors Int'l, LLC, Counter-Plaintiff, | ) ) |
| | ) |
| v. | ) |
| | ) |
| Fibertex Corporation, Counter-Defendant. | ) ) |

**Order Denying Consolidated Motion to Dismiss
and Motion for More Definite Statement**

This matter is before the Court upon Plaintiff/Counter-Defendant Fibertex Corporation's ("Fibertex") consolidated motion to dismiss and motion for a more definite statement with respect to Defendant/Counter-Plaintiff New Concepts Distributors Int'l, LLC's ("New Concepts") amended counterclaim (the "counterclaim"). (Mot., ECF No. 67; Am. Counterclaim, ECF No. 56). The counterclaim has two counts: Count I is for breach of contract, which Fibertex argues requires a more definite statement, and Count II is for unjust enrichment, which Fibertex argues should be dismissed. New Concepts has responded to the motion (ECF No. 77) and Fibertex has filed a reply (ECF No. 82). After careful consideration, the Court **denies** Fibertex's motion to dismiss and for a more definite statement (**ECF No. 67**).

  1. **Background**[1]

This matter concerns former business partners involved in the compression shapewear clothing industry. Compression shapewear garments

---

[1] The Court accepts New Concepts' allegations as true for the purposes of evaluating Fibertex's motion to dismiss. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). Additionally, portions of the Background herein are taken from Judge Torres' Report and Recommendation on Fibertex's separate motion for preliminary injunction (ECF No. 91).

are worn by women and men to provide slimming, tightening, and body sculpting effects. Fibertex, a Colombian company, manufactures and sells compression shapewear garments under the "*Co'Coon*" word trademark and composite trademark. The *Co'Coon* word mark was first used in commerce in 2000 and the composite mark in 2016. New Concepts, a Florida company, is a multi-brand distributor and was authorized by Fibertex to sell *Co'Coon* products in the United States from 2006 until 2019. New Concepts also manufactures and sells compression shapewear garments under its own trademark and tradename, "*Curveez.*" *Curveez* was developed in 2010 with the knowledge and consent of Fibertex so that the parties could sell more product under different brands to competing customers. Ninety-five percent of the worldwide seamless compression shapewear garments, including *Co'Coon* and *Curveez*, are manufactured using Santoni Seamless Machines. Because shapewear garments are mostly indistinguishable and made using the same machines, a compression shapewear company's brand is extremely valuable.

Under the agreement through which the partnership between New Concepts and Fibertex operated, New Concepts would produce products that New Concepts wanted under the *Curveez* brand (often these were products that Fibertex either did not manufacture or no longer wished to manufacture) and would sell the products that Fibertex wanted to manufacture under the *Co'Coon* brand. (ECF No. 56 at ¶¶ 17, 143.) For example, New Concepts alleges, Fibertex did not wish to manufacture plus sized garments. (*Id.* at ¶17.) Therefore, New Concepts developed *Curveez +*. (*Id.*) In 2016, New Concepts and Fibertex, based on extensive market research financed and performed by New Concepts, decided to invest in the growth of the *Co'Coon* brand specifically within the U.S. market. (*Id.* at ¶20.) Fibertex through Alejandro Angel verbally assured Janice Santiago that the relationship between Fibertex and New Concepts would remain the same and no contracts were needed between the parties. (*Id.*) New Concepts, in reliance upon the longstanding relationship between the two companies and on the active representations made by Fibertex through Mr. Angel, used New Concepts' resources, expertise, knowledge, finances, and contacts to grow and promote the *Co'Coon* brand within the U.S. market. (*Id.* at ¶21.)

New Concepts alleges that the growth of the *Co'Coon* brand was a result of New Concepts' financial investment and "constant search" for new clients, products, and distribution channels. (*Id.* at ¶23.) In sum, New Concepts "was the promoter/main contributor to any success *Co'Coon* may have had in the U.S. market." (*Id.* at ¶24.) New Concepts alleges that it expended its time and money into promoting the *Curveez* and *Co'Coon* brands "[w]ith the encouragement, knowledge and consent of Fibertex." (*Id.* at ¶25.) New Concepts

specifically claims that "Fibertex profited from [New Concepts'] work and financial investment in the brand to such an extent that revenues for *Co'Coon* products in the United States market grew by over 500% from 2016 to 2019," and that New Concepts' efforts were successfully and "mutually beneficial" to itself and Fibertex. (*Id.* at ¶¶ 27-28.)

Starting in 2019, however, the relationship began to erode. For instance, on July 5, 2019, Fibertex discovered that back in January 2019 New Concepts filed with the United States Patent and Trademark Office a Declaration of Incontestability of the *Co'Coon* word mark. Once Fibertex confronted New Concepts with this false filing, New Concepts claimed it was a mistake. New Concepts claims the relationship fractured once Fibertex sold it non-conforming products, so New Concepts stopped paying invoices totaling around $800,000. Specifically, "[b]etween May 6, 2019 and September 27, 2019, New Concepts issued purchase orders for the purchase of apparel and shapewear with a unique element, known as Bio-Crystals, which are an essential part of the fabrication because they have the effect of reducing the appearance of cellulite and improve the elasticity of the skin, for which Fibertex charges approximately 10% more than its standard items." (*Id.* at ¶38.) New Concepts claims that Fibertex "intentionally deliver[ed] non-conforming goods that [Fibertex] knew were manufactured without the Bio-Crystals" and that the absence of Bio-Crystals was confirmed in lab results. (*Id.* at ¶39.) New Concepts claims that it cannot sell these nonconforming goods and Fibertex has nevertheless demanded payment "despite its wrongful repudiation of the parties' contract . . . ." (*Id.* at ¶40.) Because of this debacle concerning non-conforming goods, around the summer of 2019, New Concepts decided to stop purchasing *Co'Coon* products from Fibertex altogether without giving Fibertex advance notice. New Concepts, however, still possessed the $800,000 worth of product. This fallout snowballed as the former partners continued to fall out, which culminated in Fibertex's filing of this lawsuit in February 2020.

### 2. Legal Standard

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading must only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint. *See* Fed. R. Civ. P. 12(b)(6). In assessing the legal sufficiency of a complaint's allegations, the Court is bound

to apply the pleading standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That is, the complaint "must . . . contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). "Dismissal is therefore permitted when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006) (internal quotations omitted) (citing *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A court must dismiss a plaintiff's claims if he fails to nudge his "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *See Id.* at 555. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

### 3. Analysis

#### a. Count I—Breach of Contract

In its opening motion, Fibertex argues that "it is unclear which contracts [New Concepts] believes that Fibertex breached." (ECF No. 67 at 6.) Specifically, Fibertex argues that although New Concepts' claim appears to focus on breached agreements to deliver products that were enhanced with Bio-Crystal technology, New Concepts' Answer identifies "50 different purchase orders" that it may, or may not, be claiming were breached. (*Id.* ("From [New Concepts'] Amended Counterclaim, it cannot be determined which of these 50 different contracts [New Concepts] believes Fibertex breached.").) Fibertex explains that it cannot formulate a response without knowing which products were purportedly defective or which contracts were allegedly breached. (*Id.* at 7.)

In response to the motion for more definite statement, New Concepts denies that its breach of contract claim is vague, but it nevertheless provides a more definite statement that clarifies the count. To wit, New Concepts

explained that its allegations concerning defective products were based on Fibertex's failure to deliver products that included Bio-Crystals, and that "[g]arments to include biocrystals [sic] are listed on the purchase orders *with the word biocrystals* included in the name of the garment." (ECF No. 77 at 7 (emphasis added).) This directly resolves Fibertex's obstacle to identifying the purchase orders at issue. New Concepts has clarified that the purchase orders at issue in Count I will include the word "biocrystals" in the name of the garment. This, in turn, will be the subset of the 50 purchase orders that New Concepts may proceed upon in its breach of contract claim and against which Fibertex must defend itself. Finally, it appears that Fibertex has conceded that New Concepts' response has provided the clarification sought by Fibertex's motion for a more definite statement. Following New Concepts' clarification with respect to the purchase orders, Fibertex's reply brief made no further argument in favor of requiring a more definite statement. *GolTv, Inc. v. Fox Sports Latin Am. Ltd.*, 277 F. Supp. 3d 1301, 1311 n.7 (S.D. Fla. 2017) (Altonaga, J.) ("When a party fails to respond to an argument or address a claim in a responsive brief, such argument or claim can be deemed abandoned.").

### b. Count II—Unjust Enrichment

Fibertex has also moved to dismiss New Concepts' count for unjust enrichment. The elements of a cause of action for unjust enrichment are: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit conferred; and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value. *Noveshen v. Bridgewater Assocs., LP*, 47 F.3d 1367 (S.D. Fla. 2014) (Marra, J.). New Concepts argues that it conferred a benefit upon Fibertex by, *inter alia*, hiring consultants and helping develop products specifically to grow the *Co'Coon* brand's U.S. presence, sharing New Concepts' expertise of the U.S. market with Fibertex, providing Fibertex with commercially valuable information such as names of sellers and retailers, and making investments to "fix *Co'Coon* sizing." (ECF No. 77 at 5.)

However, Fibertex argues that, in the Eleventh Circuit, a distributor's "advertising and promotional efforts" are not compensable under a theory of unjust enrichment against the manufacturer. (ECF No. 82 at 5.) Specifically, Fibertex relies upon *Tooltrend, Inc. v. CMT Utensili, SRL*, 198 F.3d 802 (11th Cir. 1999), where the parties shared a manufacturer and distributor relationship, and the Court held that a distributor could not allege – after the manufacturer-distributor relationship ended – that the manufacturer had been

unjustly enriched by the distributor's "advertising and promotional efforts" because distributor's efforts were directed toward extending its own profit margins and that any incidental enrichment enjoyed by the manufacturer was not unjust. *Id.* at 804, 807-808. In sum, Fibertex argues that "New Concepts (the distributor) cannot as a matter of law claim that Fibertex (the manufacturer) was unjustly enriched by New Concepts' advertising, marketing, and promotional efforts since those efforts were undertaken to extend its own profit margins." (ECF No. 82 at 5.)

New Concepts does not dispute that *Tooltrend* forecloses recovery of "advertising and promotional efforts." Rather, New Concepts argues that, as a factual matter, its unjust enrichment count seeks to recover for expenditures other than those related to advertising and promotion of Fibertex's goods that New Concepts in turn sold or distributed. (ECF No. 77 at 6.) Accordingly, Count II must survive dismissal insofar as it alleges facts that, taken as true and construed in favor of New Concepts at this juncture, would allow for recovery under an unjust enrichment theory. Defining the specific contours of the parties' relationship and the precise nature of New Concepts' expenditures is far better suited for summary judgment. At this stage, the Court finds that New Concepts has adequately stated a claim for unjust enrichment. The Court agrees with the nuance drawn out by New Concepts; namely, that New Concepts' efforts towards growing the shared *Co'Coon* brand included, *but were not limited to,* the promotional and advertising efforts that cannot be recovered as a result of *Tooltrend*.

### 4. Conclusion

For the reasons set forth above, the Court **denies** Fibertex's motion to dismiss and motion for more definite statement (**ECF No. 67**).

**Done and ordered**, in Miami, Florida on December 2, 2020.

Robert N. Scola, Jr.
United States District Judge